PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES STRAWN and JAMES STATON,
individually, and on behalf of all
others similarly situated,
                    *Plaintiffs-Appellees,*

                    v.

AT&T MOBILITY LLC, f/k/a
Cingular Wireless LLC,
                    *Defendant-Appellant,*

                    and

CINGULAR WIRELESS, a foreign
corporation,
                    *Defendant.*

No. 07-2084

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:06-cv-00988)

Argued: May 14, 2008

Decided: June 30, 2008

Before WILLIAMS, Chief Judge, NIEMEYER, Circuit Judge, and
Alexander WILLIAMS, Jr., United States District Judge for the
District of Maryland, sitting by designation.

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Chief Judge Williams and District Judge Wil-
liams joined.

**COUNSEL**

**ARGUED:** Jeffrey Michael Wakefield, FLAHERTY, SENSA-
BAUGH & BONASSO, PLLC, Charleston, West Virginia, for Appel-
lant. William L. Bands, BELL & BANDS, PLLC, Charleston, West
Virginia, for Appellees. **ON BRIEF:** Scott L. Winkelman, Jennifer N.
Waters, Lynn E. Parseghian, Katherine J. Nesbitt, CROWELL &
MORING, LLP, Washington, D.C., for Appellant. Harry F. Bell, Jr.,
Tim J. Yianne, BELL & BANDS, PLLC, Charleston, West Virginia,
for Appellees.

---

**OPINION**

NIEMEYER, Circuit Judge:

After AT&T Mobility LLC, formerly known as Cingular Wireless
LLC, removed a class action from a West Virginia state court to fed-
eral court under the Class Action Fairness Act of 2005, the district
court remanded the case, finding that AT&T failed to show that the
matter in controversy exceeded the sum or value of $5 million, exclu-
sive of interest and costs, the jurisdictional threshold established by
the Class Action Fairness Act.

The class action complaint challenges as unlawful under the West
Virginia Consumer Credit and Protection Act a practice of "bun-
dling," by which AT&T automatically enrolled each new cellular tele-
phone customer in a "Roadside Assistance" program, charging the
customer $2.99 per month if the customer did not opt out of the pro-
gram. The complaint defined the class as all consumers in West Vir-
ginia who purchased cellular telephone service from AT&T and were
charged a $2.99 monthly fee for Roadside Assistance service without
ever having requested the service or having affirmatively enrolled in
the program. AT&T demonstrated that 58,800 of its customers fell
within this definition of the class.

On the plaintiffs' motion to remand, the district court read the com-
plaint as defining a narrower class consisting of only those customers
who paid the fee "unwillingly." When AT&T could not provide an

estimate of how many customers paid the fee but did so unwillingly, the court held that AT&T had failed to carry its burden of demonstrating the basis for its allegation that the amount in controversy exceeded $5 million and remanded this case to state court.

We conclude that the district court either misread or construed too broadly the issues raised by the complaint and the definition of the putative class and therefore reverse its order remanding this case to the state court. We thus remand this case to the district court for further proceedings.

I

James Strawn and James Staton commenced this class action against AT&T Mobility LLC in the Circuit Court of Kanawha County, West Virginia, alleging violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.* Strawn and Staton alleged that they were AT&T cellular telephone subscribers and that in May 2006 they discovered that they were being assessed a $2.99 monthly charge for the Roadside Assistance service, which provides jump starts, flat tire assistance, and similar benefits. They asserted that they "never requested or enrolled for the service" and therefore were wrongfully charged for it.

Their complaint challenges AT&T's "pattern and practice" of automatically enrolling new cellular telephone customers in a free trial of its optional Roadside Assistance service and, when the free trial ends, charging them $2.99 per month if they do not opt out. It alleges:

> Plaintiffs and Class members were not given an option. Instead, the Roadside Assistance was part of a "bundled" transaction, whereby the Plaintiff and Class members had to catch the Roadside Assistance charge, and opt-out of it. Otherwise, if Plaintiff and Class members failed to catch the charge, [AT&T] automatically enrolled them for the Roadside Assistance service and imposed a $2.99 monthly charge.

Compl. ¶ 5. The complaint defines the purported class as:

> [A]ll consumers who: (1) purchased [an AT&T Mobility cellular] account in the state of West Virginia; and (2) were charged a $2.99 monthly charge for the Roadside Assistance service without ever requesting or enrolling for said service.

Compl. ¶ 20. The definition of the class excludes business customers and persons affiliated with AT&T. To justify class certification, the complaint alleges common questions of law and fact that include "whether [AT&T] engaged in a *pattern and practice* of imposing a charge for the Roadside Assistance service without consumers requesting or enrolling for said service," and "whether [AT&T] violated the WVCCPA by imposing a charge for the Roadside Assistance service without consumers requesting or enrolling for said service." Compl. ¶ 23 (emphasis added).

For relief, the complaint seeks a declaratory judgment that the pattern and practice was deceptive and unlawful under West Virginia law — specifically, West Virginia Code §§ 46A-6-102(7)(L), 46A-6-102(7)(M), and 46A-6-104, defining and prohibiting various types of deception and fraud — and an injunction prohibiting AT&T from continuing the pattern and practice. The complaint also seeks "damages of which the individual recoveries do not exceed $75,000 for Plaintiffs or any member of the Class."

Attached to the complaint are three stipulations, two signed by the named plaintiffs Strawn and Staton and one signed by counsel for the named plaintiffs and purported class members. Each of the named plaintiffs stipulated that he is not seeking damages in excess of $75,000, and counsel stipulated that their law firm does not seek damages, including attorneys fees and costs, exceeding $75,000 for each class member and that the law firm "will not accept an aggregate award for attorneys fees and costs exceeding $5 million inclusive of any other damages awarded to each named Plaintiff and Class member."

Relying on the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4, AT&T filed a notice of removal. *See* 28 U.S.C. § 1453. In the notice of removal, AT&T alleged minimal diversity of citizenship, an aggregate amount in controversy exceeding $5 million, exclusive of interest and costs, and a class size greater

than 100 persons. *See id.* § 1332(d). AT&T attached to its notice of removal an affidavit stating that from the introduction of the Roadside Assistance program in November 2004 through the filing of the complaint in September 2006, more than 58,800 AT&T customers, excluding business customers and AT&T employees, remained enrolled in the Roadside Assistance program beyond their initial free trial period and thereby were automatically charged the $2.99 monthly fee. The affidavit asserted that based on the minimum statutory damages of $200 for each person, *see* W. Va. Code § 46A-6-106(a), the amount in controversy was at least $11,760,000.

In their response, the plaintiffs argued that the class definition required AT&T to exclude from the number of class members those customers who *willingly* remained enrolled in the Roadside Assistance program. They also maintained that based on the stipulations attached to the complaint, they "effectively limited damages to $5 million or less," which is below the threshold amount for federal jurisdiction.

In light of the plaintiffs' response, the district court ordered AT&T to recalculate the estimated class size by narrowing it from 58,800, which represented all customers automatically enrolled in the Roadside Assistance service program beyond the free trial period, to "the more limited scope of the putative class" — the subset consisting of just those customers who did not willingly remain enrolled. AT&T responded that it was not possible to calculate this number, because it did not, nor could it, "track a hypothetical subset of Roadside Assistance customers who [were] being charged for Roadside Assistance but allegedly [did] not want it."

Based on AT&T's response, the district court entered a "Judgment Order" dated September 26, 2007, in which it remanded the case to the state court for lack of subject matter jurisdiction. In its supporting "Memorandum Opinion," the court rejected as ineffective the plaintiffs' effort to limit the amount in controversy through the stipulations attached to the complaint. *Strawn v. AT&T Mobility, Inc.*, 513 F. Supp. 2d 599, 602 (S.D. W. Va. 2007). But the court also held that AT&T bore the burden of establishing the predicates under CAFA for federal jurisdiction, including the $5-million amount in controversy, *id.* at 604, and that AT&T failed to carry this burden because it did

not "explain how many of the 58,800 eligible consumers who paid the [$2.99] fee did so unwillingly," *id.* at 606. The court reasoned, "the class alleged in the complaint includes only those consumers who were charged a fee without their authorization," and "[a] group that includes all of the consumers charged the $2.99 fee extends beyond the scope of the class sought in the complaint." *Id.* at 608. On that basis it granted the plaintiffs' motion to remand for lack of federal jurisdiction.

Under the authorization of 28 U.S.C. § 1453(c), AT&T filed this appeal, raising the issues of (1) "[w]hether the district court erred by imposing the burden of proof on [AT&T]" and (2) whether the district court erred in "finding the amount in controversy requirement of CAFA not satisfied." The plaintiffs did not cross-appeal to challenge the district court's ruling on the ineffectiveness of their effort to limit by stipulation the amount in controversy.

## II

We begin with the undergirding principle that federal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. *See generally* 13 Charles Alan Wright, et al., Federal Practice & Procedure § 3522 (2d ed. 1984 & Supp. 2008). Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. *Id.* If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008) ("[T]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper") (quotation marks omitted); *In re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006) (same); *Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (same); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) (same). While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short plain statement — just as federal jurisdiction is pleaded in a complaint — when removal is challenged, the remov-

ing party bears the burden of *demonstrating* that removal jurisdiction is proper. *Ellenburg*, 519 F.3d at 200.

AT&T argues that CAFA reversed this long-settled principle that places the burden of proof on the removing party by "plac[ing] this burden of proof on the party seeking to avoid federal court." While acknowledging that CAFA contains no statutory text reversing this near-canonical rule, AT&T contends that "Congress explained in the *legislative history* [of CAFA] that any uncertainty with respect to jurisdiction should be resolved in favor of finding federal jurisdiction." (Emphasis added). In making this argument, AT&T relies on the statement made by the House Sponsor of CAFA that if a class action is removed under CAFA, "the named plaintiff(s) should bear the burden of demonstrating that the removal was improper," 151 Cong. Rec. H727 (daily ed. Feb. 17, 2005) (statement of Rep. Sensenbrenner), and statements to the same effect in the Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42-43 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40-41.

The difficulty with AT&T's position is that it seeks, without textual support, to reverse the established rules for alleging and demonstrating jurisdiction on removal. The relevant portions of CAFA were enacted to *amend* the requirements for diversity jurisdiction and to *amend* the rules for removing cases to federal court, and while CAFA expressly altered certain requirements for asserting diversity jurisdiction and removing class actions, it did not reverse the established principles for alleging and demonstrating jurisdiction on removal. To the contrary, the removal provision in CAFA specifically refers to and comports with the general removal provision in § 1446, subject to a few express exceptions, thus confirming that Congress considered which rules of the existing removal procedures to keep and which to reject. *See* 28 U.S.C. § 1453(b). In the absence of any statutory text reversing the burden of proof, we presume that Congress legislated consistently with existing law and "with the knowledge of the interpretation that courts have given to [the] existing statute." *United States v. Langley*, 62 F.3d 602, 605 (4th Cir. 1995) (en banc); *see also DiTolla v. Doral Dental IPA of N.Y., LLC*, 469 F.3d 271, 275 (2d Cir. 2006) ("We presume that Congress, when it enacted CAFA, knew where the burden of proof had traditionally been placed. By its silence, we conclude that Congress chose not to alter that rule").

While AT&T is correct in noting that there are statements in the legislative history indicating the desire of some members of Congress to alter the traditional burden, those statements simply "do[ ] not concern any text in the bill that eventually became law." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005). As the court in *Brill* observed, "[W]hen the legislative history stands by itself, as a naked expression of 'intent' unconnected to any enacted text, it has no more force than an opinion poll of legislators." *Id.*; *see also Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006) ("Statements in CAFA's legislative history, standing alone, are [an] insufficient basis for departing from this well-established rule").

We thus conclude that in removing a class action based on diversity jurisdiction under 28 U.S.C. §§ 1453 and 1332(d), the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction. In so holding, we join the six other circuits that have considered this issue. *See Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006); *DiTolla*, 469 F.3d at 275; *Miedema*, 450 F.3d at 1329-30; *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685-86 (9th Cir. 2006); *Brill*, 427 F.3d at 447-48.

## III

AT&T contends that even if it has the burden of demonstrating federal jurisdiction, it nonetheless properly alleged federal jurisdiction and, when challenged on the jurisdictional amount, demonstrated the amount specified in 28 U.S.C. § 1332(d). In its notice of removal, AT&T alleged minimal diversity, the matter in controversy, and the class size — all as specified by § 1332(d), which confers federal jurisdiction over specified class actions. The plaintiffs challenged only AT&T's allegation of the amount in controversy, arguing (1) that the class should consist of only those persons who were *unwillingly* charged the $2.99 for Roadside Assistance service; and (2) that in any event, the stipulations they filed limiting their damages claims should control the amount in controversy. Because the district court rejected the plaintiffs' second point and the plaintiffs did not appeal, we are left with the question of whether AT&T demonstrated that the amount in controversy should be based on the 58,800 customers who were

automatically enrolled in the Roadside Assistance service and paid a $2.99 fee for it.

AT&T contends that the district court erred in reading the complaint to include only "customers who were 'unwillingly' enrolled in [AT&T's] Roadside Assistance program," rather than reading it to include all of the 58,800 West Virginia customers who were automatically enrolled in the program and paid the $2.99 fee. It argues that plaintiffs' complaint, fairly read, defines the class as *all* of AT&T's West Virginia customers who were automatically enrolled in the Roadside Assistance program, inasmuch as all those customers were allegedly victims of AT&T's "pattern and practice" of automatically enrolling the customers in the program without their request. It claims, therefore, to have demonstrated that the minimum amount of class damages, if the plaintiffs were to succeed on the merits, would be $11,760,000 (the minimum statutory damages of $200 per customer x 58,800 customers).

Responding to this argument, the plaintiffs argue in their papers that the proposed class includes only "unwilling" customers and excludes customers who, even though automatically enrolled in the program, chose to retain the service after being charged the $2.99 fee. The plaintiffs' argument, however, amounts to a post hoc characterization of the pattern and practice that they are challenging in the complaint as illegal, as their characterization is inconsistent with the descriptions they give in the complaint of the pattern and practice and of the class of persons described as victims.

The complaint makes clear that what the plaintiffs are challenging as unlawful under West Virginia law is AT&T's allegedly deceptive *practice* of "bundling" the Roadside Assistance service with new cellular telephone service, such that *all customers were automatically enrolled* in a free trial period and then charged $2.99 per month at the end of that period if they did not opt out. The class is not defined as those willing or unwilling to retain the program, but rather as those who "were not given an option." As the complaint alleges:

> Plaintiffs and Class members *were not given an option.* Instead, the Roadside Assistance *was part of a "bundled" transaction*, whereby the Plaintiff and Class members had to

catch the Roadside Assistance charge, and opt-out of it. Otherwise, if Plaintiff and Class members failed to catch the charge, [AT&T] *automatically enrolled them for the Roadside Assistance service and imposed a $2.99 monthly charge*.

Compl. ¶ 5 (emphasis added). Thus, the complaint challenges the *initial* transaction in which customers were automatically given both telephone service and Roadside Assistance service, even if the customers opted out later after discovering the charge. That the automatic-enrollment transaction is the essence of the alleged violation is also reflected by the definition of the class, which is alleged to include:

all consumers who: (1) purchased [an AT&T cellular] account in the state of West Virginia; and (2) were charged a $2.99 monthly charge for the Roadside Assistance service *without ever requesting or enrolling for said service*.

Compl. ¶ 20 (emphasis added). This class definition includes *any* AT&T customer who was charged $2.99 after being automatically enrolled in Roadside Assistance, "without ever requesting or enrolling for said service." The proposed class makes no distinction between automatically-enrolled customers who, upon eventually discovering the $2.99 charge, chose to ratify it and retain the service and those who, upon discovering the charges, became "unwilling" customers. Rather, the wrong from the allegedly deceptive practice is described as having occurred at the time of the automatic enrollment, and the wrong was not undone after the fact merely because the particular customer decided, after discovering the charge, that he or she liked the service and therefore "willingly" retained it. Such subjective inquiries about a customer's "willingness" or "unwillingness" in continuing to pay the charge might relate to a limitation of damages by ratification, but it does not diminish the class defined in the complaint: those who were at the outset automatically enrolled in the program without their request — those who "were not given an option." At that point, none of the customers were "willing" or "unwilling"; rather, *all* were unaware.

AT&T submitted an affidavit stating that approximately 58,800 individual consumers "in West Virginia have remained enrolled in the

Roadside Assistance program beyond the initial free trial period and thus have paid [AT&T's] $2.99 per month charge." And the plaintiffs have offered nothing to suggest that the 58,800-customer figure is not an accurate number.

Therefore, taking (1) the challenged practice as alleged in the complaint, (2) the definition of the class consisting of persons who were victims of the challenged practice, and (3) AT&T's data about the number of persons fitting that class, which were established by affidavit and remained unchallenged, AT&T demonstrated that the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, and therefore that the jurisdictional amount under CAFA is satisfied. *See* 28 U.S.C. § 1332(d)(2).

Accordingly, we reverse the district court's order remanding this case to state court and remand to the district court for further proceedings.

*REVERSED AND REMANDED*