# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DELORES LEWIS, individually and
on behalf of a class of similarly
situated individuals,
        *Plaintiff-Appellee,*

v.

VERIZON COMMUNICATIONS, INC., a
Delaware corporation,
        *Defendant-Appellant.*

No. 10-56512

D.C. No.
2:10-cv-02337-PSG-
MAN

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
November 3, 2010—Pasadena, California

Filed November 18, 2010

Before: Mary M. Schroeder, Richard C. Tallman and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

Michael J. McMorrow, Chicago, Illinois, for plaintiff-appellee Delores Lewis, et al.

Paul J. Watford, Los Angeles, California, for defendant-appellant Verizon Communications, Inc.

## OPINION

SCHROEDER, Circuit Judge:

This is an appeal under the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.). The Act authorizes the removal of class action lawsuits from state to federal court where the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The issue before us is whether the district court properly remanded the case to state court on the ground that this requirement was not satisfied.

CAFA mandates a prompt disposition of controversies that arise over issues relating to jurisdiction under the Act. All of the deadlines have been satisfied by the parties, thus an appeal must be decided within 60 days after it is filed. 28 U.S.C. § 1453(c)(2). Hence, we are required to decide this appeal no later than November 22, 2010, 60 days after the petition for appeal was granted. *See Amalgamated Transit Union v. Laidlaw Transit Services, Inc.*, 435 F.3d 1140, 1144 (9th Cir. 2006) ("[T]here is no appeal until the petition for permission is granted, and the entry of the order granting permission serves as the notice of appeal for all timing issues.").

In this circuit, when the complaint does not contain any specific amount of damages sought, the party seeking removal

under diversity bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *see also Lowdermilk v. U.S. Bank Nat'l Ass'n.*, 479 F.3d 994 (9th Cir. 2007) (removing defendant has the burden to show amount in controversy "to a legal certainty" when complaint pleads damages *less* than CAFA's jurisdictional amount). To satisfy its burden in this case, the removing defendant, Verizon Communications, Inc. ("Verizon"), supplied an affidavit to show that the potential damages could exceed the jurisdictional amount. We conclude that this showing satisfies Verizon's burden. We therefore vacate the district court's order remanding the case to state court, and remand to the district court for further proceedings. In doing so, we reach a conclusion similar to that reached by the Seventh Circuit in *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008). That case, like this one, involved claims for unauthorized billings, and the defendant in that case, like Verizon, submitted an affidavit showing its total billings exceeded the jurisdictional amount. *Id.* at 985.

## BACKGROUND

The named plaintiff, Delores Lewis, filed this case in California state court on December 9, 2009. The complaint concerns charges billed by the defendant, Verizon, on behalf of Enhanced Services Billing, Inc. ("ESBI"), a billing processor, or "aggregator," for third-party vendors who offer telephone-related services. This includes weather and traffic reports, sports scores, stock tips, and jokes—all of which are known as "premium content." ESBI bills customers for this premium content through local landline telephone providers, like Verizon, which places a charge on a subscriber's bill.

Lewis claims Verizon billed her for services that she never ordered. Describing these charges as "unauthorized," she seeks to represent a class of landline Verizon customers in California who have been billed for such services that they

never expressly agreed to or requested. The operative complaint states no fixed amount for damages sought.

On March 30, 2010, Verizon filed a notice of removal in the District Court for the Central District of California alleging that the case satisfied the $5 million amount in controversy requirement under CAFA, 28 U.S.C. § 1332(d). That section provides in relevant part "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and cost . . . ." *Id.* at § 1332(d)(2).

In support of their notice of removal, Verizon submitted a declaration of Paul E. Glover, Verizon's Senior Consultant for Product Management and Development, to establish that members of the class were billed more than $5 million during the relevant period:

> I have reviewed Verizon's records for charges billed by Verizon on behalf of ESBI to landline telephone subscribers in California from March 1, 2006 to the present. The records show that these subscribers were billed more than $5 million, exclusive of fees and interest, from March 1, 2006 until the present for ESBI charges . . . .

On April 29, 2010, Plaintiff filed a motion to remand the action to state court on the ground that Verizon failed to carry its burden of demonstrating that the case satisfies CAFA's amount in controversy requirement. Plaintiff's motion to remand proffered no evidence or new allegation that the amount the class might be entitled to receive was less than Verizon's total ESBI billings. Nor did Plaintiff concede that the class sought a recovery of less than $5 million. Instead, Plaintiff contended that, because the complaint challenged only "unauthorized" charges, there was a distinction between "unauthorized" and "authorized" charges for the purposes of determining the amount in controversy. Relying on such a dis-

tinction, Plaintiff attacked the Glover Declaration as "incompetent," since it only spoke to the amount of Verizon's gross billings to consumers for ESBI content. On June 30, 2010, the district court granted Plaintiff's motion to remand, and on September 24, 2010, we granted Verizon's petition for permission to appeal the remand pursuant to 28 U.S.C. § 1453(c), authorizing interlocutory review of a CAFA removal order.

In ordering the matter remanded to the state court, the district court adopted Plaintiff's distinction between "authorized" and "unauthorized" charges to hold that the complaint placed only the unauthorized charges into controversy. *Lewis v. Verizon Commc'ns, Inc.*, 2010 WL 2650363, at *3 (C.D. Cal. June 30, 2010). Thus, according to the district court, the Glover Declaration did not satisfy the Defendant's burden to demonstrate the requisite amount in controversy, since it describes the total sum of all ESBI charges billed by Verizon, not just the "unauthorized" ones. *Id.* at *3. There was, however, no evidence to support the premise that some portion of the charges alleged in the complaint were "authorized." Nor did any pleading suggest the class recovery would be less than $5 million.

Verizon contends on appeal that, given the Plaintiff's refusal to limit the damages sought and Verizon's showing that the total billings exceed $5 million, the total billings constitute the "amount in controversy." We agree.

## DISCUSSION

Prior to CAFA, a class action could be heard in federal court under diversity jurisdiction only if there was complete diversity, i.e., all class representatives were diverse from all defendants, and if at least one named plaintiff satisfied the amount in controversy requirement of more than $75,000. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005). Viewing these two limitations as "defects in diversity jurisdiction," Congress, in 2005, passed CAFA, which signifi-

cantly expanded federal jurisdiction in diversity class actions. *See* David Marcus, *Erie, the Class Action Fairness Act, and Some Federalism Implications of Diversity Jurisdiction*, 48 WM. & MARY L. REV. 1247, 1289-90 (2007).

CAFA, however, aimed to limit federal jurisdiction to larger class actions. CAFA originally included a $2 million amount in controversy requirement, but it was increased to $5 million after the Congressional Budget Office reported that "the bill would impose additional costs on the Federal district court system" since most class-action lawsuits would likely satisfy the $2 million requirement. *See* Letter from Dan L. Crippen, Dir., Cong. Budget Office, to F. James Sensenbrenner, Jr., Chairman, Comm. on the Judiciary, U.S. House of Representatives (Mar. 11, 2002), in H.R. Rep. No. 107-370, at 27.

CAFA was also designed to settle jurisdictional issues early. Thus, appeals must be filed "not less than 7 days" after a remand order. 28 U.S.C. § 1453(c)(1). If the court of appeals accepts the appeal, the court must issue a final judgment not more than 60 days later. *Id.* at § 1453(c)(2). And if the court of appeals does not issue judgment within the time allowed, "the appeal shall be denied." *Id.* at § 1453(c)(4).

Although CAFA is relatively new, the concept of an "amount in controversy" has a long history. Congress originally created a jurisdictional amount for diversity jurisdiction in the Judiciary Act of 1789. That statute established a $500 jurisdictional amount, intended as a floor for the size of cases that could reach the federal courts. "Congress has used the requirement of an amount in controversy to limit the original and derivative access to the lower federal courts." Thomas E. Baker, *The History and Tradition of the Amount in Controversy Requirement: A Proposal to "Up the Ante" in Diversity Jurisdiction*, 102 F.R.D. 299, 302-03 (1984). Over the years, Congress has seen fit to increase the amount, but its purpose has remained the same — "to ensure that a dispute is suffi-

ciently important to warrant federal-court attention." *Exxon Mobil Corp.*, 545 U.S. at 548. The law with respect to establishing an "amount in controversy" has thus developed in the context of diversity jurisdiction.

**[1]** In determining the amount, we first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The complaint, however, does not always state a specific sum, and in such cases, this court has recognized different burdens of proof depending on the specific circumstances. *Guglielmino*, 506 F.3d at 699. The fundamental principle laid down in diversity cases, nevertheless, remains under CAFA: the party asserting federal jurisdiction has the burden of showing the case meets the statutory requirements for the exercise of federal jurisdiction and therefore belongs in federal court. This traditional rule of burden allocation to determine removal jurisdiction comports with the Supreme Court's view that "[t]he dominant note in the successive enactments of Congress relating to diversity jurisdiction is one of jealous restriction, of avoiding offense to state sensitiveness, and of relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (citing Henry J. Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 HARV.L.REV. 483, 510 (1928)).

**[2]** Thus we expressly recognized in *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006), that under CAFA the burden of establishing removal jurisdiction is, as it was before CAFA, on the party wishing to see the case in federal court. While CAFA relaxed the federal removal requirements in some respects, it did not alter the traditional rule which places the burden of establishing removal jurisdiction "on the proponent of federal jurisdiction." *Id.* This means that jurisdictional issues may be disputed, and, when

they are, the burden is on the party removing the case from state court to show the exercise of federal jurisdiction is appropriate.

**[3]** In this case the Plaintiff alleges that she and the other putative class members are being billed by Verizon for premium services they never ordered. In the complaint the charges at issue are termed "unauthorized" charges. To support removal, Verizon submitted an affidavit that its total billings for all ESBI services in California exceeded $5 million. There was no contrary evidence, no showing that some substantial part of the total billings was "authorized," and no allegation that Plaintiff sought less than $5 million.

In what may well be at root a semantic misunderstanding, the district court refused to accept the total billings as representing the amount in controversy. Instead, looking to the allegations of the complaint, it held that the total billings could not represent the amount in controversy because the complaint was claiming liability only for charges that were "unauthorized." *Lewis*, 2010 WL 2650363 at *2. The district court thus assumed total billings would include both authorized and unauthorized charges and held that the Defendant had failed to meet its burden under our case law to show the amount in controversy, i.e., unauthorized charges, exceeded the jurisdictional amount. *Id.* at *4.

**[4]** There is no evidence or allegation to support this assumption, however. The Plaintiff has alleged that the putative class has been billed for unauthorized charges; the Defendant has put in evidence of the total billings and the Plaintiff has not attempted to demonstrate, or even argue, that the claimed damages are less than the total billed. Indeed, even though it was not apparent in the district court, before us the Defendant has conceded that where proposed class members have been billed for services they did not order, they are entitled to a refund. Hence, on this record, the entire amount of the billings is "in controversy." The amount in controversy is

simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation."). To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were "unauthorized" within the meaning of the complaint.

**[5]** The district court rejected the reasoning of the two circuits that have, in circumstances similar to this, held a showing on the part of the defendant of the total amounts billed for services challenged by the complaint is sufficient to establish the jurisdictional amount. *Spivey*, 528 F.3d at 985-986; *Stawn v. AT&T Mobility LLC*, 530 F.3d 293, 295 (4th Cir. 2008). The district court followed other district courts in this circuit that incorrectly read the other circuits' decisions as resting on pleadings rather than on an evidentiary showing. *See*, *e.g., Amezcua v. Cellco P'ship*, 2009 WL 1190553 (N.D. Cal. May 4, 2009).

**[6]** The law in our circuit is articulated a little differently from that of others, in that we expressly contemplate the district court's consideration of some evidentiary record. *See generally* Diane B. Bratvold & Daniel J. Supalla, *Standard of Proof to Establish Amount in Controversy When Defending Removal Under the Class Action Fairness Act*, 36 WM. MITCHELL L. REV. 1397 (2010). We employ a preponderance of the evidence standard when the complaint does not allege a specific amount in controversy. *Guglielmino*, 506 F.3d at 699. The Seventh Circuit, along with the First and Second Circuits, apply what may be a lower standard of proof: a "reasonable probability" standard. *See, e.g., Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (when the complaint is "silent or ambiguous on one or more of the

ingredients needed to calculate the amount in controversy . . . the removing litigant must show a reasonable probability that the stakes exceed the minimum."); *see also Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009); *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 277 (2nd Cir. 2006). The Fourth Circuit has not adopted a specific standard of proof, although "several district courts within the Fourth Circuit have concluded that the appropriate standard of proof is preponderance of the evidence." *Laws v. Priority Trustee Services of N.C., L.L.C.*, 2008 WL 3539512 at * 2 (W.D.N.C. Aug. 11, 2008). Both the Seventh Circuit in *Spivey* and the Fourth Circuit in *Strawn* have looked to evidence outside the complaint when the complaint is silent as to the amount. Regardless of the label applied to the standard of proof, the result in this case should be the same as that in the Seventh and Fourth Circuits' decisions in *Spivey* and *Strawn*.

*Spivey* is the closest to our case. In *Spivey*, the plaintiff filed suit in state court seeking to represent a class of customers allegedly billed by a marketing company for unauthorized charges. 528 F.3d at 983. The complaint alleged that imposing unauthorized charges on customers was a standard practice of the defendant. *Id.* at 985-86. As in this case, the defendant removed the action to federal court under CAFA, and also supplied an affidavit to show that its total charges exceeded $5 million, but the district court found the evidentiary showing insufficient, remanding the case to state court. *Id.* The Seventh Circuit reversed, holding that the defendant had satisfied its burden. It concluded that if the defendant routinely imposed such charges without authorization, all such charges are in play. "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Id.* at 986.

The Fourth Circuit decision is similar. In *Strawn*, the plaintiff filed suit in state court seeking to represent a class of customers who were automatically enrolled in a "Roadside

Assistance" program when signing up for cellular phone service. 530 F.3d at 294. The district court limited the class to customers who paid the fee "unwillingly." *Id.* The Fourth Circuit vacated the remand order because the complaint did not distinguish between "willing" and "unwilling" customers, and thus included any phone customer who was charged the fee after being automatically enrolled in the program. *Id.* at 299. It relied on AT&T's affidavit stating the approximate number of customers in West Virginia enrolled in the program, coupled with the existence of minimum statutory damages, to hold that AT&T satisfied the jurisdictional burden. *Id.* at 298-299 ("[T]he minimum amount of class damages, if the plaintiffs were to succeed on the merits, would be $11,760,000 (the minimum statutory damages of $200 per customer x 58,800 customers)").

**[7]** Here, as in *Spivey* and *Strawn*, the stakes exceed $5 million. The Plaintiff is seeking recovery from a pot that Defendant has shown could exceed $5 million and the Plaintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less. The amount in controversy on this record therefore comprises the total billings and the jurisdictional amount is satisfied. Verizon has acknowledged at oral argument that Plaintiff is due refunds of billings for services never requested. The district court, on the basis of a record that lacked the clarity provided by the arguments on appeal, erred in assuming, without pleading or proof, that some significant portion of the total billings were "authorized" and separate from the damages the Plaintiff seeks. Verizon has borne its burden to show the amount in controversy exceeds $5 million.

The remand order is **VACATED** and the case is **REMANDED** for further proceedings in district court.