**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-2300

MICHAEL A. SCOTT, on behalf of himself and all others similarly situated,

Plaintiff – Appellee,

v.

CRICKET COMMUNICATIONS, LLC, f/k/a Cricket Communications, Inc.,

Defendant – Appellant.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,

Amicus Supporting Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:15-cv-03330-GLR; 1:15-cv-03759-GLR)

Argued:  May 11, 2017                                      Decided:  July 28, 2017

Before GREGORY, Chief Judge, and DUNCAN and DIAZ, Circuit Judges.

Vacated and remanded by published opinion.  Judge Duncan wrote the opinion, in which Chief Judge Gregory and Judge Diaz joined.

**ARGUED:** Charles Alan Rothfeld, MAYER BROWN LLP, Washington, D.C., for Appellant.  Benjamin Howard Carney, GORDON, WOLF & CARNEY, CHTD, Towson, Maryland, for Appellee.  **ON BRIEF:** Archis A. Parasharami, Matthew A. Waring, MAYER BROWN LLP, Washington, D.C., for Appellant.  Martin E. Wolf, GORDON, WOLF & CARNEY, CHTD, Towson, Maryland, for Appellee.  Kate Comerford Todd, Warren Postman, UNITED STATES CHAMBER LITIGATION CENTER, INC., Washington, D.C.; Ryan L. Bangert, BAKER BOTTS L.L.P., Dallas, Texas, for Amicus Curiae.

_____

DUNCAN, Circuit Judge:

This appeal concerns the degree of evidentiary specificity with which a removing defendant must prove jurisdiction to defeat a motion to remand under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Defendant-Appellant Cricket Communications, LLC ("Cricket") removed this class action from state court, invoking CAFA jurisdiction. The district court granted Plaintiff-Appellee Michael Scott's motion to remand. Because the district court's decision was based on a legal error, we remand for further proceedings consistent with this opinion.

## I.

## A.

### 1.

Sometime between July 2013 and March 2014, Scott purchased two Samsung Galaxy S4 cellular phones from Cricket for "hundreds of dollars each." J.A. 28. The phones are only operable on a network using Code Division Multiple Access ("CDMA") technology. Known to Cricket, but not to Scott, at the time Scott purchased his phone Cricket had begun to shut down its CDMA network. When Cricket completed that process in 2015, Scott alleges that his phones--which were "locked" to Cricket's CDMA network--were rendered "useless and worthless." J.A. 25.

On September 24, 2015, Scott filed a putative class action in the Circuit Court for Baltimore City, Maryland. Scott, the sole named plaintiff, alleged Cricket's actions violated Maryland's express warranties and implied warranties of merchantability and

3

fitness for a particular purpose, which in turn was a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* Under the MMWA, a consumer may bring a class action in state or federal court alleging a breach of warranty under state law if there are more than 100 named plaintiffs. *Id.* § 2310(d). Seeking to bring a class action on behalf of himself and similarly situated individuals, Scott defined the class as: "All Maryland citizens who, between July 12, 2013 and March 13, 2014, purchased a CDMA mobile telephone from Cricket which was locked for use only on Cricket's CDMA network." J.A. 34.

On October 30, 2015, Cricket removed the case to the United States District Court for the District of Maryland. Cricket invoked CAFA, which grants district courts jurisdiction over putative class actions with (1) more than 100 class members, (2) an aggregate amount in controversy exceeding $5,000,000, and (3) minimal diversity between the parties.[1] 28 U.S.C. §§ 1332(d)(2), (5). In support of its notice of removal, Cricket attached the declaration of former Cricket employee Chad Walker. Based on his personal familiarity with Cricket's records, Walker attested that during the relevant period "Cricket customers purchased at least 50,000 CDMA handsets that were shipped to and activated in Maryland." J.A. 63. Cricket thus asserted that the class consists of more than 100 persons. Because Scott stated in his complaint that each phone cost "hundreds of dollars," J.A. 28, Cricket applied a conservative estimate of $200 per phone

---

[1] There is no dispute that the parties are minimally diverse. Cricket is a Delaware corporation with its principal place of business in Georgia and Scott is a Maryland citizen.

4

and asserted that "the total amount in controversy is, at a minimum, $10,000,000." J.A. 58.

2.

On November 23, 2015, Scott moved to remand the case to state court. He argued that Cricket did not satisfy its burden to allege jurisdiction under CAFA because the class Cricket described in its notice of removal is broader than Scott's defined class. According to Scott, Cricket's assertion that it sold 50,000 handsets that were shipped to and activated in Maryland fails to meet CAFA's requirements because the class only consists of Maryland *citizens* who purchased a CDMA phone.

Cricket opposed remand, attaching another declaration from Cricket employee Rick Cochran ("Cochran Declaration"). The Cochran Declaration stated that "Cricket's records indicate that between July 12, 2013 and March 13, 2014, Cricket customers who listed addresses located in Maryland on their Cricket accounts . . . purchased at least 47,760 CDMA handsets that were 'locked' to Cricket's CDMA network." J.A. 77. Again, using the conservative estimate of $200 per phone, Cricket alleged that the revised amount in controversy was $9,552,000, still well above the CAFA threshold. Cricket argued that it need not, and could not, provide the exact number of handsets Maryland citizens purchased. However, Cricket reasoned that the district court could infer that putative class members purchased enough phones to invoke CAFA jurisdiction because to meet CAFA's required $5,000,000 amount in controversy class members need to only have purchased 25,000 of the 47,760 phones. Cricket thus urged the district court to

5

make the "'reasonable inference[]' that the vast majority of Cricket's Maryland customers are Maryland citizens." ECF No. 18, at 12 (alteration in original).

The district court declined to do so and granted Scott's motion to remand. In explaining its decision, the district court found that, although Cricket sufficiently alleged federal jurisdiction under CAFA, it had not proven jurisdiction by a preponderance of the evidence. The district court held that Cricket's proffered evidence--the Cochran Declaration asserting that Cricket sold 47,760 locked phones during the relevant time period to customers who listed a Maryland address--was "over-inclusive" because "the Class includes only Maryland citizens, but Cricket's evidence pertains to all consumers who provided Maryland addresses." J.A. 92. Relying on this court's precedent that "[r]esidency is not tantamount to citizenship," J.A. 92, the district court rejected Cricket's proffered evidence as not sufficiently "tailor[ed] . . . to Scott's narrowly defined Class." J.A. 95. According to the district court, the Cochran Declaration required the court to "speculate to determine the number of class members that purchased CDMA cellphones and the amount in controversy." J.A. 93. Although the district court concluded that Cricket failed to prove federal jurisdiction it did not make any finding of fact as to the amount in controversy. Cricket timely appealed.[2]

---

[2] Generally, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C. § 1447(d). CAFA, however, creates an exception and permits a court of appeals to "accept" an appeal from a remand order of a class action. *Id.* § 1453(c)(1). "If the court of appeals accepts" such an appeal, it must render judgment within 60 days. *Id.* § 1453(c)(2).

Scott argues that we must deny Cricket's appeal because 60 days have elapsed since Cricket filed its petition for permission to appeal. However, the 60-day clock does (Continued)

6

II.

A.

On appeal, Cricket maintains that the Cochran Declaration shows it is more likely than not that the putative class includes more than 100 members and the amount in controversy exceeds $5,000,000. Scott counters that Cricket failed to tailor its evidence to the defined class of Maryland citizens.[3] Whether remand is appropriate turns on whether the district court had subject matter jurisdiction under CAFA, a question we review de novo. *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 390 (4th Cir. 2012). "We review the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom *de novo*." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). When a district court fails to make findings of fact "because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing

___

not begin until we grant Cricket's petition and accept the appeal. *See, e.g.*, *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 678 (7th Cir. 2006). Consistent with this court's practice, we deferred action on the petition pending full merits briefing. *See, e.g.*, *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 962 (4th Cir. 2013); *cf. Dart Cherokee Basin Op. Co. v. Owens*, 135 S. Ct. 547, 556 n.6 (2014) ("Section 1453(c)'s timing provision . . . was designed to promote expedition, not to discourage Courts of Appeals from acting on petitions for appeal."). Therefore, the appeal is timely.

[3] Scott also argues that the MMWA, which prohibits district courts from exercising authority over class actions with fewer than 100 named plaintiffs, presents an additional bar to federal jurisdiction because Scott is the sole named plaintiff. 15 U.S.C. § 2310(d)(3)(C). Cricket counters that CAFA provides an alternative basis for jurisdiction irrespective of the number of named plaintiffs. Because we remand on the issue of CAFA's jurisdictional requirements, we decline to address the interaction between the MMWA and CAFA.

7

findings." *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982); *see also Cty. Sch. Bd. of Henrico Cty., VA v. Z.P. ex rel. R.P.*, 399 F.3d 298, 310–11 (4th Cir. 2005).

B.

Article III courts are courts of limited jurisdiction, possessing only the authority granted by the Constitution and Congress. *See Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008). In 2005, Congress enacted CAFA in response to perceived misuse of the class-action device. *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008). As relevant here, CAFA relaxes diversity jurisdiction requirements and provides district courts authority over class actions with (1) more than 100 class members, (2) an amount in controversy exceeding $5,000,000 and (3) minimally diverse parties. 28 U.S.C. § 1332(d)(2), (5). A defendant invoking CAFA to remove a class action from state court must file a notice of removal in the proper district court "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The defendant bears the burden of alleging that CAFA jurisdiction exists, *Strawn*, 530 F.3d at 296, and must file the notice of removal within 30 days from receipt of the initial pleading. 28 U.S.C. § 1446(b). Because "no antiremoval presumption attends cases invoking CAFA . . . a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 135 S. Ct. 547, 554 (2014) (citations omitted).

If the plaintiff challenges removal, however, the defendant "bears the burden of *demonstrating* that removal jurisdiction is proper." *Strawn*, 530 F.3d at 297. When a plaintiff's complaint leaves the amount of damages unspecified, the defendant must

8

provide evidence to "show . . . what the stakes of litigation . . . are given the plaintiff's actual demands." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis omitted). To resolve doubts regarding a defendant's asserted amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee*, 135 S. Ct. at 554.

Because Scott's complaint limited the putative class to Maryland citizens, jurisdiction exists only if at least 100 Maryland citizens purchased more than $5,000,000 worth of locked phones from Cricket. A person is a citizen of a state only if she is a citizen of the United States and a domiciliary of that state. *Brown v. Keene*, 33 U.S. (8 Pet.) 112, 115 (1834). Whether a person is a domiciliary turns on the individual's intent. Not all those physically present within a state are residents. *See Ecker v. Atl. Refining Co.*, 222 F.2d 618, 621 (4th Cir. 1955). A resident intends to live in the place for the time being and a citizen has an intention to remain in the state indefinitely. *Id.* Therefore, "[f]or purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson*, 549 F.3d at 937 n.2.

When the amount in controversy hinges on the citizenship of class members, a removing defendant need not conclusively establish domicile, but the record must show more than "naked averment[s]" of citizenship. *Robertson v. Cease*, 97 U.S. 646, 648 (1878). As courts of limited jurisdiction, we are constitutionally prohibited from "inferr[ing] argumentatively" that a person's residency is her domicile. *Brown*, 33 U.S. at 115. When citizenship is questioned, a court must make an individualized inquiry

9

relying on certain factors such as voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes. 13 Fed. Prac. & Proc. Juris. § 3612 (3d ed. 2009); *see also Webb v. Nolan*, 484 F.2d 1049, 1051 (4th Cir. 1973). No single factor is dispositive.

With this background in mind, we turn to the district court's decision here.

## C.

## 1.

First, we agree with the district court that Cricket's initial statement that it sold "at least 50,000 CDMA mobile telephones that were shipped to and activated in Maryland," J.A. 17, during the relevant time period suffices to allege jurisdiction under CAFA. While Cricket's assertion is broader than the proposed class, that does not, as Scott argues, make the notice of removal "incurably defective." ECF No. 15-1, at 3. The Supreme Court was clear in *Dart Cherokee*: the liberal rules of pleading apply to removal allegations. 135 S. Ct. at 553. Cricket's short and plain statement contains enough "factual content that allows the court to draw the reasonable inference" that the amount in controversy exceeds $5,000,000.[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation

---

[4] Scott also argues that Cricket did not sufficiently allege or prove more than 100 class members. We focus our discussion on the amount-in-controversy, but the district court on remand should use the same principles outlined here to assess whether Cricket has proven that the class includes more than 100 members.

omitted); *see also* J.A. 56–58 (alleging that the number of putative class members is greater than 100 and that the amount in controversy is $10,000,000).

2.

Once Scott challenged Cricket's allegations through a motion to remand, Cricket was required to prove CAFA jurisdiction exists by a preponderance of the evidence. *See Dart Cherokee*, 135 S. Ct. at 554; *Strawn*, 530 F.3d at 297. Because the district court committed legal error in disregarding Cricket's evidence as overinclusive, we are unable to engage in appellate review to determine whether Cricket met its burden to prove jurisdiction. However, because the sufficiency of Cricket's evidence will undoubtedly arise again on remand, we discuss it below. *See United States v. Oyegoke-Eniola*, 734 F.3d 1262, 1264 (10th Cir. 2013).

"Estimating the amount in controversy is not nuclear science," as a removing defendant is somewhat constrained by the plaintiff. *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1317 (11th Cir. 2014). After all, as "masters of their complaint" plaintiffs are free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005). In many removal cases, a defendant's allegations rely to some extent on reasonable estimates, inferences, and deductions. Thus, that Cricket's evidence is overinclusive is not, as the district court reasoned, dispositive. The key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but "an estimate of the amount that will be put at issue in the course of the litigation." *See McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir.

11

2008).[5]  A removing defendant can use overinclusive evidence to establish the amount in controversy so long as the evidence shows it is more likely than not that "a fact finder might legally conclude that" damages will exceed the jurisdictional amount.  *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002); *see also Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

Because Scott chose to limit the class to Maryland citizens Cricket must show it is more likely than not that enough Maryland citizens purchased locked phones to meet the $5,000,000 threshold.  Using the conservative estimate of $200 per phone based on the complaint's allegation that each phone cost "hundreds of dollars," J.A. 28, Cricket must demonstrate by a preponderance of the evidence that at least 100 Maryland citizens purchased 25,000 locked phones.  Cricket contends that it cannot acquire information narrowly tailored to the proposed class because it is "an impossible task given that definitive determination of domicile requires consideration of numerous" factors including the location where someone votes, pays taxes, and works.  Appellant's Br. at 2.  However, Cricket does not need to make a "definitive determination of domicile."  *Id.* Further, many factors relevant to the domicile inquiry are publicly available, including

---

[5] To the extent Cricket argues that its evidence categorically proves jurisdiction because Scott did not provide any rebuttal evidence, we reject that contention.  Although *Dart Cherokee* states that "both sides submit proof" when a plaintiff challenges removal, 135 S. Ct. at 554, we do not read that to mean that if only one party submits proof it automatically carries the day.  Rather, *Dart Cherokee* clarifies that a motion to remand challenging the amount in controversy reopens the record *allowing* both parties to submit evidence.  When only one party submits evidence, we accept it as uncontroverted but must still test whether the responsible party has met its burden.

12

business and professional licensures, property ownership, property taxes, and voter registration.[6]

To meet its burden, Cricket must provide enough facts to allow a court to determine--not speculate--that it is more likely than not that the class action belongs in federal court. *Cf. Iqbal*, 556 U.S. at 678. While Cricket need not tailor its evidence to exactly match Scott's proposed class, it must provide enough factual detail for the district court to discharge its constitutional duty and assess whether jurisdiction exists.

In making such a determination, the district court "may consider which party has better access to the relevant information." *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009). Cricket "need not concede liability" to win jurisdiction, *Lewis*, 627 F.3d at 400, but as the party invoking jurisdiction Cricket ultimately bears the burden of proof. Scott is the master of his complaint, but Cricket is the master of its notice of removal.

---

[6] We note that CAFA-exception cases holding that "a rebuttable presumption that a person's residence is his domicile" are inapplicable to the determination of whether the amount in controversy is met here. *Mason v. Lockwood, Andrews & Newman, P.C.*, 842 F.3d 383, 390 (6th Cir. 2016). In CAFA-exception cases, the court has necessarily determined that jurisdiction exists and is only considering whether the exceptions impose a limit. The Sixth Circuit in *Mason* explained as much. *Id.*, 842 F.3d at 392 (noting that because "the local controversy exception is not jurisdictional . . . a party asserting the exception does not encounter" presumptions against federal jurisdiction); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007) (holding that CAFA exceptions are nonjurisdictional because they "*require* federal courts--although they *have* jurisdiction . . . to '*decline to exercise jurisdiction*' when" CAFA's threshold requirements are met) (citation omitted); *cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006) (holding that jurisdictional terms are those that Congress "clearly states [as] *threshold* limitation[s] on a statute's scope") (emphasis added).

III.

Because we conclude that the district court applied the wrong legal standard to Cricket's evidence, we vacate the district court's judgment and remand for reconsideration consistent with the principles set forth in this opinion.

*VACATED AND REMANDED*