**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BLANCA ARGELIA ARIAS, individually and on behalf of herself and others similarly situated, *Plaintiff-Appellee*, <br><br> v. <br><br> RESIDENCE INN BY MARRIOTT, a Delaware limited liability company; MARRIOTT INTERNATIONAL, INC., a Delaware corporation, *Defendants-Appellants.* | No. 19-55803 <br><br> D.C. No. 2:18-cv-08818-RGK-JPR <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted August 13, 2019
Pasadena, California

Filed September 3, 2019

Before: Consuelo M. Callahan, D. Michael Fisher,[*]
and Morgan Christen, Circuit Judges.

Opinion by Judge Callahan

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

**SUMMARY**[**]

**Class Action Fairness Act / Amount in Controversy**

The panel vacated the district court's order sua sponte remanding to state court a putative class action brought by employees against Residence Inn by Marriott, which had been removed to federal court under the Class Action Fairness Act.

The panel held that when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements were satisfied. Marriott's notice of removal alleged that the amount in controversy requirement was satisfied, and the district court did not conclude that Marriott's allegations were implausible. The panel held that by remanding the case to state court sua sponte, the district court deprived Marriott of a fair opportunity to submit proof. The panel concluded that this error warranted vacatur of the remand order.

The panel held that when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions. The panel held that Marriott's notice of removal included personnel and payroll data, and with that data, Marriott estimated the amount-in-controversy

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

by making assumptions that were plausible and may prove to be reasonable in light of allegations in the complaint. The panel held that on remand Marriott must show that its estimated amount in controversy relied on reasonable assumptions.

The panel held that when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.

The panel rejected plaintiff's contention that the position taken by Marriott in its summary judgment motion in state court – that plaintiff's claims are barred by a release from a prior class action settlement – defeated federal court jurisdiction.

The panel remanded on an open record for the district court to permit the parties to submit evidence and arguments on the amount in controversy.

---

**COUNSEL**

Brian P. Long (argued), Seyfarth Shaw LLP, Los Angeles, California; William Dritsas, Seyfarth Shaw LLP, San Francisco, California; for Defendants-Appellants.

Samvel Gashgian (argued) and Ramin R. Younessi, Law Offices of Ramin R. Younessi, Los Angeles, California, for Plaintiff-Appellee.

**OPINION**

CALLAHAN, Circuit Judge:

Blanca Arias filed a putative class action against Residence Inn by Marriott, LLC and Marriott International, Inc. ("Marriott") in California superior court, alleging that Marriott failed to compensate its employees for wages and missed meal breaks and failed to issue accurate itemized wage statements. Marriott removed the action to federal court alleging diversity jurisdiction under the Class Action Fairness Act ("CAFA"). The district court sua sponte remanded the case back to state court, and Marriott appeals.

In some of our early cases interpreting CAFA, we adopted legal standards that were influenced by a general "presumption against federal jurisdiction." *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 999 (9th Cir. 2007). The Supreme Court has made clear that regardless of whether such a presumption exists in run-of-the-mill diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Because some remnants of our former antiremoval presumption seem to persist,[1] we reaffirm three principles that apply in CAFA removal cases. First, a removing defendant's notice of removal "need not contain evidentiary submissions" but only plausible allegations of the jurisdictional elements. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197

---

[1] A recent example of this persistence is reflected in a district court decision we reversed in *Ehrman v. Cox Communications Inc.*, No. 19-55658, 2019 WL 3720013 (9th Cir. Aug. 8, 2019). *See id.* at *3 ("Because 'no antiremoval presumption attends cases invoking CAFA,' *Dart Cherokee*, 135 S. Ct. at 554, courts should be especially reluctant to *sua sponte* challenge a defendant's allegations of citizenship.").

(9th Cir. 2015). Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions. *See id.* at 1197–99. Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). We vacate the district court's order remanding the action to state court, and we remand for further proceedings to allow the parties to present evidence and argument on the amount in controversy.

## I.

Arias works for defendant Residence Inn by Marriott, LLC in Los Angeles, California. On August 23, 2018, Arias filed a putative class action in state court against Marriott alleging that Marriott failed to pay wages, provide rest breaks, and provide itemized wage statements, all in violation of state wage and hour laws. Arias seeks certification of a class of all employees of Marriott "who were subjected to individual wage and hour violations, during the period within four years from the filing of th[e] Complaint and continuing through trial." In addition to compensatory damages, Arias seeks civil penalties under the California Private Attorney General Act, disgorgement of "ill-gotten gains" under California's Unfair Competition Law, and attorneys' fees.

On October 12, 2018, Marriott removed the case to federal district court, invoking CAFA jurisdiction.[2]

---

[2] The removal statute requires that a notice of removal be filed within 30 days after the defendant is served with the complaint.

Specifically, Marriott alleged that the district court had original jurisdiction over the matter because the class action satisfied CAFA's requirements of minimum diversity (any member of the class is a citizen of a state different from any defendant), class size (at least 100), and amount in controversy (exceeding $5,000,000). *See* 28 U.S.C. § 1332(d)(2), (d)(5)(B). To show minimum diversity, Marriott alleged that it is a citizen of Maryland and Delaware and it relied on the allegation in the complaint that Arias is a citizen of California. To satisfy the class size requirement, Marriott provided a declaration from a human resources officer stating that Marriott employed at least 2193 nonexempt employees during the period identified in the complaint.

To satisfy the amount-in-controversy requirement, Marriott relied on a combination of the complaint's definition of the class, Marriott's employee data (e.g., number of nonexempt employees, hourly rate of pay, and number of workweeks worked by putative class members), and assumptions about the frequency of the violations alleged in the complaint. Based on its assumptions and calculations, Marriott alleged a potential amount in controversy exceeding $15 million with its most "conservative estimate" totaling over $5.5 million, excluding attorneys' fees (which Marriott alleged should be included in the calculation). Marriott's calculation in its notice of removal breaks down as follows:

---

28 U.S.C. § 1446(b). Marriott alleged that its notice of removal was timely because Marriott was served with the complaint on September 12, 2018.

*Unpaid Overtime*. Marriott cited Arias's allegation that Marriott "routinely" failed to pay its employees overtime wages. Using an assumption of 30 minutes per week (6 minutes per day) of unpaid overtime wages, Marriott calculated an amount in controversy for this claim of $1,617,017.70. Marriott suggested that, based on the allegations in the complaint, an assumed violation rate of 60 minutes per week would be reasonable and would double the estimated amount in controversy for unpaid overtime.

*Rest Break Premiums*. Marriott cited Arias's allegation that Marriott failed to provide employees with uninterrupted rest periods and failed to compensate employees for missed rest periods. In Marriott's most conservative estimate, it assumed a denial of one rest break per week and calculated an amount in controversy for this claim of $2,155,493. Marriott also suggested that assuming three missed rest periods per week would also be "conservative" and would yield an amount in controversy of $6,466,480 "in potential damages for *penalties alone*." Marriott also suggested that the complaint could reasonably be interpreted as seeking one rest period premium per day, in which case the amount in controversy for this claim alone would be over $10 million.

*Wage Statement Penalties*. Marriott cited Arias's allegation that Marriott failed to provide employees timely and accurate wage statements and that none of the paystubs actually given to employees complied with the Labor Code. Based on the penalties provided by statute, Marriott calculated an amount in controversy for this claim of $1,788,150.

*Attorneys' Fees*.   Marriott argued that a reasonable estimate of attorneys' fees likely to be recovered should be included in the estimate of the amount in controversy.  It argued that 25 percent of the amount of estimated damages should be added to the amount in controversy to account for attorneys' fees.

*Table 1. Marriott's Estimate of Amount in Controversy*

| | Unpaid Overtime | Rest Break Premiums | Wage Statements | Subtotal | Total with 25% fees |
|---|---|---|---|---|---|
| "Conservative" Estimate | $ 1,617,018 | $ 2,155,493 | $ 1,788,150 | $ 5,560,661 | $ 6,950,826 |
| Higher Estimate | $ 3,234,035 | $ 10,777,466 | $ 1,788,150 | $ 15,799,651 | $ 19,749,564 |

One month after Marriott filed the notice of removal, the district court issued an order sua sponte remanding the case to state court.  The district court found Marriott's calculations of the amount in controversy "unpersuasive," concluding that the calculations rested on speculation and conjecture.  The court faulted Marriott for not offering evidentiary support for its assumptions of violation rates and reasoned that "[e]qually valid assumptions could be made that result in damages that are less than the requisite $5,000,000 amount in controversy."   The court also concluded that "prospective attorneys' fees are too speculative" to be included in the amount in controversy. The court thus concluded that Marriott "failed to satisfy [its] burden that the amount in controversy meets the jurisdictional requirement."

The parties report that since the district court's remand order, litigation has gone forward in the state court. According to the parties, on July 18, 2019, Marriott filed a motion for summary judgment, arguing that a release from a related class action settlement bars all of Arias's claims.

Marriott timely filed a petition for permission to appeal under 28 U.S.C. § 1453(c)(1), which we granted.

II.

"We review remand orders in CAFA cases de novo." *Fritsch*, 899 F.3d at 792.

"Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. 28 U.S.C. § 1332(d). Congress intended CAFA to be interpreted expansively." *Ibarra*, 775 F.3d at 1197. As in *Ibarra*, the parties here "do not contest CAFA's jurisdictional requirements of minimum diversity and class numerosity on appeal; the sole dispute is whether CAFA's requirement that the amount in controversy exceed $5 million is met here." *Id.* at 1196–97.

Marriott raises several challenges to the district court's remand order. First, Marriott argues the district court imposed an erroneous burden of proof by sua sponte remanding the case to state court without allowing Marriott an opportunity to support its allegations with evidence. Second, Marriott argues the district court erred in disallowing Marriott's use of assumed violation rates in its estimate of the amount in controversy. Third, it argues the district court erred by "refusing to consider prospective attorneys' fees in the amount in controversy."

A.

We agree with Marriott that when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.

"[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

Marriott's notice of removal alleged that the amount-in-controversy requirement was satisfied. The notice of removal discussed each of the claims alleged in the complaint and explained the components of Marriott's estimate of the amount in controversy (e.g., number of class members as defined in the complaint, number of workweeks worked during the class period, and assumed violation rates). The notice of removal thus provided "a short and plain statement of the grounds for removal." *Id.* at 551 (quoting 28 U.S.C. § 1446(a)); *see also Ibarra*, 775 F.3d at 1197.

The district court did not conclude that Marriott's allegations were implausible. Instead, the district court stated that Marriott failed to meet its burden of *proving* the amount in controversy. In rejecting Marriott's assumed violation rates, the district court cited a lack of "evidence supporting [Marriott's] assumptions." But a notice of removal "need not contain evidentiary submissions." *Dart Cherokee*, 135 S. Ct. at 551. Instead, evidence showing the

amount in controversy is required "only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 554. "[W]hen a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* The district court clearly questioned Marriott's allegation, but by remanding the case to state court sua sponte, the district court deprived Marriott of "a fair opportunity to submit proof." *Ibarra*, 775 F.3d at 1200. This error warrants vacatur of the remand order.[3]

## B.

We also agree with Marriott that in assessing the amount in controversy, a removing defendant is permitted to rely on "a chain of reasoning that includes assumptions." *Id.* at 1199. Such "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* An assumption may be reasonable if it is founded on the allegations of the complaint. *See id.* at 1198–99. For example, in *Ibarra*, we noted that the complaint alleged "a 'pattern and practice' of labor law violations but d[id] not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Id.* at 1199. Because "a 'pattern and practice' of doing something does not necessarily mean *always* doing something," we reasoned, the defendant's assumed violation rate of 100% may or may not have been valid. *Id.* at 1198–99. We thus

---

[3] Marriott conceded at oral argument that the notice of removal did not identify how many potential class members worked part-time and how many worked full-time. But Marriott was entitled to an opportunity to make this showing in response to a challenge by Arias or the district court.

vacated the district court's remand order and remanded "to allow both sides to submit evidence related to the contested amount in controversy." *Id.*

*LaCross v. Knight Transportation, Inc.*, 775 F.3d 1200 (9th Cir. 2015), a case decided the same day as *Ibarra*, provides an example of when a maximum assumption is reasonable in light of the plaintiff's allegations. The plaintiff in *LaCross* alleged that the defendant misclassified truck drivers as independent contractors and sought, on behalf of a putative class, reimbursement of expenses related to ownership and operation of the trucks, including fuel costs. *Id.* at 1202. The defendant included *all* fuel costs during the class period in its calculation of the amount in controversy, and we held that the assumption was reasonable because the plaintiff alleged that all class members were truck drivers. *Id.* at 1203 (reversing the district court's remand order and determining as a matter of law that the amount-in-controversy requirement was satisfied).

Marriott's notice of removal included personnel and payroll data (e.g., number of employees meeting class description, average rate of pay, and number of workweeks worked during the class period). With that data, Marriott estimated the amount in controversy by making assumptions about the frequency of violations of the sort alleged in the complaint. Marriott tied its assumed violation rates to the complaint as follows:

| | Allegations of the Complaint | Marriott's Lowest Assumed Violation Rate |
|---|---|---|
| Unpaid Overtime | "Defendants *routinely* failed to pay Plaintiffs and other aggrieved employees . . . overtime wages . . . ." ¶ 35 (emphasis added). | 6 minutes unpaid overtime per day (30 minutes unpaid overtime per week). |
| Rest Break Premiums | "Defendants *routinely* failed to pay Plaintiffs and other aggrieved employees . . . compensation for missed rest and meal breaks . . . ." ¶ 35 (emphasis added). | 1 missed rest break per week |
| Wage Statements | "Defendants failed to provide the Plaintiffs with timely and accurate wage and hour statements . . . . *Not one* of the paystubs that Plaintiffs received complied with Labor Code § 226 . . . ." ¶ 48 (emphasis added). | 100% of wage statements |

Marriott's assumptions are plausible and may prove to be reasonable in light of the allegations in the complaint. The district court rejected Marriott's assumptions because it was reasonably possible that the damages at issue *might be*

less than $5 million.**[4]**   This reasoning recognized that Marriott, as the removing party, will bear the burden of proof, but it also reflects a misapprehension of the amount-in-controversy requirement.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).  In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover.  *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them").  An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be "less than the requisite . . . amount," as the district court reasoned.  Where a removing defendant has shown potential recovery "*could* exceed $5 million and the [p]laintiff has neither acknowledged nor sought to establish that the class recovery is potentially any less," the defendant "has borne its burden to show the amount in controversy exceeds $5 million." *Lewis*, 627 F.3d at 401 (emphasis added).

The district court characterized Marriott's assumed violation rates as being "speculation and conjecture," apparently because Marriott did not provide evidence proving the assumptions correct.  The district court seems to have imposed a requirement that Marriott prove it actually violated the law at the assumed rate.  But assumptions made

---

**[4]** The district court did not identify the "[e]qually valid assumptions" that might result in an amount in controversy of less than $5 million.

part of the defendant's chain of reasoning need not be proven; they instead must only have "some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199; *see also Lewis*, 627 F.3d at 400 ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint."). On remand, Marriott will "bear[] the burden to show that its estimated amount in controversy relie[s] on reasonable assumptions." *Ibarra*, 775 F.3d at 1199.

## C.

The district court suggested that courts within the circuit are split on whether attorneys' fees should be considered in the amount in controversy. The district court sided with other district courts that have concluded "prospective attorneys' fees are too speculative for inclusion into amount in controversy."

In perceiving a split of authority, the district court overlooked our precedent. As we stated in *Fritsch*, "[w]e have long held (and reiterated [in early 2018]) that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." 899 F.3d at 794. In *Fritsch*, we reaffirmed that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Id.* "The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence." *Id.* at 788.

Here, by her complaint, Arias seeks recovery of attorneys' fees, and there is no dispute that at least some of

the California wage and hour laws that form the basis of the complaint entitle a prevailing plaintiff to an award of attorneys' fees. *See id.* (citing Cal. Labor Code §§ 218.5, 226, 1194). The district court thus erred in excluding prospective attorneys' fees from the amount in controversy.

Marriott argues that attorneys' fees should be estimated at 25 percent of the potential damages. Although such an estimate might be reasonable, we have declined to adopt a per se rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Fritsch*, 899 F.3d at 796; *cf. id.* n.6 ("We do not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate."). As we did in *Fritsch*, "we leave the calculation of the amount of the attorneys' fees at stake to the district court on remand." *Id.*[5]

## D.

Arias argues that the position taken by Marriott in its summary judgment motion in state court—that Arias's claims are barred by a release from a prior class action settlement—defeats federal court jurisdiction. Arias is wrong for two reasons. First, "[i]t is well settled that 'post-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing.'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) (quoting *United Steel, Paper & Forestry, Rubber, Mfg.,*

---

[5] Of course, if the district court on remand were to find Marriott's lowest estimate of potential damages reasonable, there would be no need to calculate attorneys' fees because the damages in controversy would exceed the jurisdictional threshold.

*Energy, Allied Indus. & Serv. Workers Int'l Union v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010)).  Second, the strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation.  Arias's argument "conflat[es] the amount in controversy with the amount of damages ultimately recoverable."  *LaCross*, 775 F.3d at 1203.  As we stated in *Ibarra*,

> Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.

775 F.3d at 1198 n.1.

Arias also suggests that jurisdiction is defeated because she "has stipulated that this action is not valued at $5,000,000 for CAFA jurisdiction or otherwise."  Even if this vague statement in Arias's appellate brief were binding on her,[6] it would be irrelevant to the CAFA analysis.  The Supreme Court has held that when "a class-action plaintiff . . . stipulates, prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total," the district court should "ignore[]

---

[6] It is not clear that the *value* of a case is the same as the amount at stake in the case.  More likely, the value of a case—unlike the amount in controversy—reflects both the amount at stake *and* the plaintiff's likelihood of prevailing.

that stipulation" when assessing the amount in controversy. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 590, 596 (2013). This is so because although individual plaintiffs "are the masters of their complaints" and may "stipulat[e] to amounts at issue that fall below the federal jurisdictional requirement," the same is not true for a putative class representative, who "cannot yet bind the absent class." *Id.* at 595–96.

## III.

We vacate the district court's judgment and remand on an open record for further proceedings consistent with this opinion. The district court may hold such further proceedings as it deems appropriate to permit the parties to submit evidence and arguments on the amount in controversy. The parties shall bear their own costs on appeal.[7]

**VACATED and REMANDED.**

---

[7] Arguing that this appeal is frivolous, Arias requests sanctions. We deny the request.