**FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEVONE HARRIS, on behalf of himself and all others similarly situated, | No. 20-16767 |
| Plaintiff-Appellee, | D.C. No. 3:19-cv-07801-WHO |
| v. | OPINION |
| KM INDUSTRIAL, INC., a Delaware corporation, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
William Horsley Orrick, District Judge, Presiding

Argued and Submitted October 16, 2020
San Francisco, California

Before: Kim McLane Wardlaw and Daniel P. Collins, Circuit Judges, and Richard K. Eaton,* Judge

Opinion by Judge Eaton;
Dissent by Judge Collins

EATON, Judge:

In order to remove a case commenced as a class action in a state court, the

Class Action Fairness Act of 2005 ("CAFA") requires that the removing defendant

---

* Richard K. Eaton, Judge of the United States Court of International Trade, sitting by designation.

allege that the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2). Here, the plaintiff factually attacked the defendant's allegations regarding the amount in controversy. After the parties had an opportunity to submit evidence, the district court remanded the case to state court because it found that the defendant based the claimed amount in controversy on unreasonable assumptions. We affirm.

I.

On October 24, 2019, Levone Harris filed a class action complaint in California state court against his former employer KM Industrial, Inc. ("KMI"). Harris alleged that KMI had violated several provisions of the California Labor Code including failing to provide meal and rest breaks, pay overtime wages, furnish compliant wage statements, indemnify expenditures and losses, and timely pay all final wages.

Harris brought suit on behalf of several putative classes and subclasses of employees for the "Relevant Time Period," commencing "four years prior to the filing of this action until judgment is entered." The complaint contained a cause of action for labor violations suffered by an "Hourly Employee Class," described as "[a]ll persons employed by [KMI] and/or any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the Relevant Time Period." Harris also brought causes of action based on subclasses of the Hourly

2

Employee Class. Two of these subclasses are important here: (1) the "Meal Period Sub-Class" and (2) the "Rest Period Sub-Class."

In his complaint, Harris defined the Meal Period Sub-Class as "[a]ll Hourly Employee Class members who worked a shift in excess of five hours during the Relevant Time Period." Harris alleged that KMI "maintained a policy or practice of not providing [Harris] and members of the Meal Period Sub-Class with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code section 512 ad [sic] the applicable Wage Order." The Rest Period Sub-Class was defined as "[a]ll Hourly Employee Class members who worked a shift of at least three and one-half (3.5) hours during the Relevant Time Period." Harris alleged that KMI "maintained a policy or practice of not providing [Harris and] members of the Rest Period Sub-Class with net rest period [sic] of at least ten minutes for each four hour work period, or major fraction thereof, as required by the applicable Wage Order."

KMI timely filed a notice of removal on November 27, 2019, asserting that CAFA vested the federal district court with original subject matter jurisdiction because the amount placed in controversy by the claims in Harris's complaint exceeded $5 million.[1] 28 U.S.C. § 1332(d)(2). KMI alleged that the amount in

_____

[1] Neither party contests the jurisdictional requirements of class numerosity or minimal diversity on appeal. Accordingly, the sole dispute is whether

controversy was $7,163,325, which it calculated by totaling the value it assigned to five of the eight causes of action, plus attorney's fees. KMI represented that this calculation was based on the allegations set forth in the complaint, employee and payroll data, and KMI's own assumptions regarding the frequency of violations as applied to the relevant class or subclass. To support its calculation, KMI also submitted evidence in the form of a declaration by Julian Lopez ("First Lopez Declaration"), the corporate human resources director for KMI's parent company.[2]

In his declaration, Lopez estimated that, in the four-year period prior to the filing of the complaint, KMI had "employed approximately 442 putative class members" who "worked an aggregate of 39,834 workweeks." He based the declaration on his own personal knowledge and information taken from KMI's "computer system which, among other things, tracks certain personnel and payroll information of [KMI's] employees." The First Lopez Declaration made no mention of the number or length of shifts worked by the Hourly Employee Class members

---

the amount in controversy exceeds the $5 million jurisdictional threshold required under CAFA.

[2] The First Lopez Declaration addressed four factual matters: (1) the Hourly Employee Class consists of approximately 442 putative class members; (2) of those 442 putative class members, 237 resigned or were terminated during the Relevant Time Period; (3) putative class members worked an aggregate of 39,834 workweeks; and (4) the median rate of pay for putative class members was $20.00 per hour.

during the 39,834 workweeks. Nor did it define the length of a workweek itself with respect to what constituted a fulltime week or shift.

Importantly, KMI assumed, for purposes of calculating the amount in controversy, that all of the individuals in the putative Hourly Employee Class—442—were also all members of the Meal Period Sub-Class and the Rest Period Sub-Class for the duration of the Relevant Time Period. Thus, for Harris's meal period claim, KMI assumed that the entire Hourly Employee Class of 442 employees missed one meal period per workweek across an aggregate of 39,834 workweeks. Similarly, for the rest period claim, KMI assumed that all 442 members of the Hourly Employee Class were also members of the Rest Period Sub-Class and had missed two rest periods per workweek across an aggregate of 39,834 workweeks. Thus, KMI assumed that the 442 Hourly Employee Class members worked shifts long enough to qualify for one meal period and two rest periods during each week of the 39,834 workweeks during the four-year Relevant Time Period.

Harris filed a motion to remand the case to state court on the grounds that the district court lacked subject matter jurisdiction because KMI "ha[d] failed to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million, as required under CAFA." In his brief supporting his remand motion, Harris contended that KMI's calculations "improperly inflate the amount in controversy" by relying on "unfounded assumptions." Specifically, Harris objected

to KMI's assumption that the violation rate of one missed meal period and two missed rest periods, suffered by the Meal Period and Rest Period subclasses, was suffered by the entire Hourly Employee Class. Harris found unreasonable KMI's assumption that "every [Hourly Employee Class member] missed [one] meal period every week [and] two rest periods every week," without considering "other relevant factors, including shift length, the number of days the [Hourly Employee Class members] worked per week, or whether they took vacations or leaves of absence." Harris thus maintained that KMI's "removal is predicated upon misinterpretations of the class definitions and allegations asserted in the complaint[,]" by assigning meal period and rest period damages to the entire Hourly Employee Class.

KMI opposed Harris's motion to remand and provided additional evidence in the form of a second declaration by Julian Lopez ("Second Lopez Declaration"). While the Second Lopez Declaration responded to some of Harris's attacks on the allegations underlying the assumptions,[3] it did not address the frequency with which Hourly Employee Class members worked shifts that would have made them eligible for meal or rest breaks. Thus, in response to Harris's challenge, KMI did not provide

---

[3] The Second Lopez Declaration essentially repeats the information from the First Lopez Declaration. However, it does address two new factual matters: (1) the average hourly rate of pay for Hourly Employee Class members ($22.94), and (2) the number of weeks worked by each individual member of one of the other putative subclasses described in the complaint, the Wage Statement Penalties Sub-Class.

specific evidence to support its assumption that all 442 individuals that composed the Hourly Employee Class were also members of the Meal Period Sub-Class and the Rest Period Sub-Class throughout the Relevant Time Period.

The district court granted Harris's motion to remand to the state court, finding that KMI had "failed to establish the amount-in-controversy by a preponderance of the evidence" because "no evidence support[ed]" KMI's assumption "that the 442 potential class members regularly, or at least more often than not" worked the requisite number of hours that would have entitled them to meal or rest periods. That is, the district court found that KMI did not support with competent evidence its assumption that the 442 Hourly Employee Class members worked shifts sufficient to make them members of both subclasses during the 39,834 individual workweeks. The district court held that, without more, it could not credit KMI's calculations "because [KMI's] potential damages calculations rely on these assumptions." Given the lack of evidence on the record showing "how many putative [Hourly Employee Class] members worked shifts that would entitle them to a meal or rest break," the district judge found that KMI's assumptions were unreasonable because they increased the likelihood that "KMI's [amount in controversy] calculation would be grossly exaggerated."

II.

We have jurisdiction pursuant to 28 U.S.C. § 1453(c), and we review district court "remand orders in CAFA cases *de novo.*" *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 771 (9th Cir. 2020) (quoting *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019)). The sole jurisdictional dispute here is whether KMI sufficiently demonstrated below that it met CAFA's requirement that the amount in controversy exceed $5 million.

A.

In his complaint, Harris does not enumerate the putative class's claimed damages. Where this allegation is lacking, a removing defendant need only allege in its notice of removal that the amount in controversy requirement is met. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88–89 (2014).

Thereafter, the plaintiff can contest the amount in controversy by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *See Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack "contests the truth of the . . . allegations" themselves. *Id.* (citation omitted). When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence,

8

that the amount in controversy exceeds the $5 million jurisdictional threshold. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing *Dart*, 574 U.S. at 88–89). Both parties may submit evidence supporting the amount in controversy before the district court rules. *Salter*, 974 F.3d at 963; *Ibarra*, 775 F.3d at 1197.

In *Salter*, as here, the plaintiff filed a putative class action asserting a set of wage and labor violations, which the defendant then removed to federal court, invoking CAFA jurisdiction. *Salter*, 974 F.3d at 961. In response, the plaintiff moved to remand the case but did not contest the factual assertions in the defendant's notice of removal, or "assert that [the defendant] misinterpreted the thrust of his complaint," or "offer any declaration or evidence that challenged the factual bases of [the defendant's] plausible allegations." *Id.* at 964. Nonetheless, the district court granted the plaintiff's motion to remand after finding that the defendant had "failed to adequately show that the amount in controversy exceeded $5 million." *Id.* at 961. On appeal, we concluded that the plaintiff "challenged the form, not the substance, of [the defendant's] showing" and accordingly had "mounted only a facial attack, rather than a factual attack." *Id.* at 961, 964. In doing so, we rejected the view that a defendant "must support its jurisdictional allegations with competent proof, under the same evidentiary standard that governs in the summary judgment context" where a plaintiff only mounts a facial attack. *Id.* at 964 (cleaned up).

9

KMI maintains that Harris similarly made only a facial challenge because he "did not contest the truth of [KMI's] jurisdictional allegations." We disagree. Because Harris directly challenged the truth of KMI's allegation that all 442 Hourly Employee Class members worked shifts long enough to qualify for meal and rest periods, we find that Harris made a factual attack. *See id.* at 964.

In his brief accompanying the motion to remand, Harris claimed that KMI unreasonably "assumed every type of injury alleged in the complaint was suffered by each [putative class member]," even though "the causes of action alleged in the [c]omplaint are alleged on behalf of specific classes or are based on allegations that are applicable to members of the class that were injured." Harris insisted that KMI unreasonably assumed that the Hourly Employee Class members missed meal and rest periods in each of the 39,834 workweeks. For Harris, KMI's assumption was unreasonable because the company failed to provide any "further description of any other relevant factors, including shift length, the number of days the [Hourly Employee Class members] worked per week, or whether they took vacations or leaves of absence" despite this evidence being available to KMI. For Harris, because KMI provided *nothing* to show whether, or how often, Hourly Employee Class members worked shifts long enough to make them eligible for meal or rest periods, it failed to meet its burden to produce evidence supporting its assumption that all members of the Hourly Employee Class were also members of the two subclasses,

10

and that they worked long enough shifts in each of the 39,834 workweeks to qualify for meal and rest periods.

Harris did not introduce evidence outside the pleadings. A factual attack, however, need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence. *See Salter*, 974 F.3d at 964; *Ibarra*, 775 F.3d at 1199 (holding that it is sufficient to "contest[ an] assumption" without "assert[ing] an alternative [assumption] grounded in real evidence"). Here, Harris sufficiently disputed the factual basis of KMI's assumption that all Hourly Employee Class members had suffered one meal and two rest period violations per workweek across 39,834 workweeks by attacking the assumption's factual underpinnings. Notably, Harris contested KMI's failure to demonstrate that all members of the Hourly Employee Class worked shifts long enough to qualify for meal and rest periods. *Cf. Salter*, 974 F.3d at 964. Moreover, KMI treated Harris's attack as a factual one by submitting proof in the form of the Second Lopez Declaration supporting some of its assumptions following the motion to remand. The Second Lopez Declaration, however, did not support KMI's assumption that the Hourly Employee Class members were all members of the two subclasses.

Because Harris "contest[ed] the truth of the [defendant's] factual allegations," we conclude that Harris's motion to remand raised a factual challenge to KMI's

11

assumptions that all 442 Hourly Employee Class members worked shifts long enough to be eligible for meal and rest periods. *Id.* Accordingly, when given the opportunity to present evidence, following Harris's motion to remand, KMI had the burden of supporting its "jurisdictional allegations with competent proof." *Id.*

B.

Once Harris contested the reasonableness of KMI's assumptions, KMI had the burden of proving by a preponderance of the evidence that its assumptions were reasonable. A defendant may rely on reasonable assumptions to prove that it has met the statutory threshold. *See Ibarra*, 775 F.3d at 1197; *see also Arias*, 936 F.3d at 922. A defendant need not make the plaintiff's case for it or prove the amount in controversy beyond a legal certainty. *See Dart*, 574 U.S. at 88–89; *see also Arias*, 936 F.3d at 925. Nonetheless, the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remained at all times with KMI.

The preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden. Rather, "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. The district court should weigh the

12

reasonableness of the removing party's assumptions, not supply further assumptions of its own. After considering any evidence put forth by the parties, and assessing the reasonableness of the defendant's assumptions, "the court then decides where the preponderance lies." *Id.* (citation omitted).

KMI did not carry this burden because it relied on assumptions regarding the Meal Period and Rest Period subclasses that were unreasonable. As the district court found, KMI has failed to provide *any* evidence to support its assumption that all 442 Hourly Employee Class members were the same as the members of the Meal Period Sub-Class or the Rest Period Sub-Class or that they all worked shifts long enough to qualify for meal or rest periods.

In his complaint, Harris alleged causes of action on behalf of specific classes and subclasses, each with its own eligibility criteria derived from particular California Labor Code provisions. The complaint defined the Hourly Employee Class more broadly than the two subclasses. Nothing in the complaint indicated that all members of the Hourly Employee Class were members of the Meal Period Sub-Class or the Rest Period Sub-Class or that the Hourly Employee Class members worked shifts that would qualify them as members of the two subclasses. KMI's initial submission did not provide proof that would support either assumption. When given the opportunity to support the reasonableness of its assumptions, *i.e.* after Harris factually attacked them, KMI produced the Second Lopez Declaration, which

provided additional evidence for some of KMI's allegations but still failed to address class membership or shift length. By doing so, KMI failed to produce any proof that the members of the Hourly Employee Class and the two subclasses were the same and that they all worked shifts long enough to qualify for meal and rest periods, and this failure rendered KMI's assumptions unsupported and unreasonable. Furthermore, given that KMI's second declaration supplemented some of its amount in controversy allegations, it also could have been the vehicle to provide evidence supporting the assumptions contested here, but was not.

We thus agree with the district court that relying on the factually unsupported and unreasonable assumption that the 442 Hourly Employee Class members worked shifts long enough to entitle them to meal and rest periods would exaggerate the amount in controversy. The district court found that "KMI did not provide any evidence, either in support of its motion to remove or in opposing the motion to remand, regarding the 442 potential class members' shifts or the number of employees that worked full time." Thus, KMI offered no proof that all of the 442 Hourly Employee Class members worked sufficient shifts during the 39,834 workweeks to qualify them for meal and rest periods. Therefore, KMI has failed to carry the burden of proving the statutory amount in controversy by a preponderance of the evidence.

14

III.

Finally, because both parties were afforded the opportunity to place evidence on the record supporting their respective positions as to the amount in controversy, the district court did not err in granting Harris's motion to remand the case to state court, and a remand to the district court for further factfinding is not required. *Ibarra* is not to the contrary. There, we remanded the case to the district court to give the parties, for the first time, the opportunity to submit evidence as to the statutory threshold. *See Ibarra*, 775 F.3d at 1195.[4] Because in *Ibarra* only the parties' briefs and evidence submitted with the defendant's notice of removal were on the record, and no opportunity had been provided to either party to submit evidence after the amount in controversy had been contested, remand was appropriate. *Id.* at 1196. Unlike *Ibarra*, here we are not dealing with an "open record" or a situation where the defendant lacked notice of its need to submit additional evidence. *Id.* at 1199. Here, the parties had an adequate opportunity to place evidence on the record following the motion to remand, as shown by the fact that KMI took advantage of that opportunity, but only in support of some, not all, of the contested jurisdictional

---

[4] Although this was *Ibarra's* second appeal to this court after having been twice remanded to state court, we did not reach the merits in the first. Instead, we simply remanded the case to the district court based on our controlling decision in *Rodriguez v. AT&T Mobility Services LLC*, 728 F.3d 975, 977 (9th Cir. 2013), which we decided while the appeal in *Ibarra* was pending and which clarified the proper burden of proof for a removing defendant. *Ibarra*, 775 F.3d at 1196.

15

allegations. Our precedent does not direct that KMI should be given another chance to make its case. *See Ibarra*, 775 F.3d at 1199; *see also Dart*, 574 U.S. at 88–89.

**AFFIRMED.**

*Harris v. KM Industrial, Inc.*, No. 20-16767

COLLINS, Circuit Judge, dissenting:

I disagree with the majority's conclusion that the district court properly remanded this case to state court after Defendant-Appellant KM Industrial, Inc. ("KMI") removed it to federal court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).[1]  I therefore respectfully dissent.

**I**

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2)); *see also* 28 U.S.C. § 1332(d)(5).  Under 28 U.S.C. § 1453(b), such class actions may be removed to federal court upon the timely filing by any defendant of a notice of removal in accordance with 28 U.S.C.

---

[1] KMI's notice of removal also relied on federal question jurisdiction, based on Plaintiff's assertion of a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(2)(A), 1681d(a), 1681n, 1681o.  However, the parties agreed that Plaintiff lacked Article III standing to assert such a claim, and the district court therefore concluded that there was no federal-question jurisdiction.  KMI does not challenge this conclusion on appeal.  And because the district court found CAFA jurisdiction lacking, it did not address KMI's argument that, if CAFA jurisdiction exists, then the FCRA claim should not be remanded but presumably should be dismissed.

§ 1446.  Because § 1446(a) only requires a notice of removal to "contain[] a short and plain statement of the grounds for removal," *id.*, a notice of removal under CAFA need only include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5,000,000.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  In removing this putative class action asserting wage-and-hour claims to federal court under CAFA, KMI's notice of removal set forth in detail how it calculated the amount in controversy with respect to each of the major claims in the complaint filed by Plaintiff-Appellee Levone Harris ("Plaintiff"), and it also attached a declaration from Julian Lopez, the Corporate Human Resources Director of KMI's parent company, to support some of those assertions.

In later remanding the case, the district court specifically found fault only with respect to KMI's calculations concerning two of Plaintiff's claims—*viz.*, the complaint's claims that KMI failed to provide its employees with the meal breaks and rest breaks required by California law—and those are the only calculations at issue in this appeal.[2]  In describing the amounts at issue for these two claims, KMI

_____

[2] Although an appellee can argue, without filing a cross-appeal, that the district court's judgment should be affirmed on the ground that the court erred in rejecting the appellee's other arguments, I see no basis to apply that rule here.  Although Plaintiff's principal appellate brief repeats (at times almost verbatim) many of the arguments he made below, that brief makes no effort to address the district court's reasons for rejecting many of those alternative arguments, much less to explain

relied on Lopez's assertion that, in the four-year period prior to the filing of the complaint, KMI "employed approximately 442 putative class members" who "worked an aggregate of 39,834 workweeks." For Plaintiff's missed-meal-periods claim, KMI assumed one violation per week per employee and then multiplied $20.00 per hour (the amount due for one violation, based on the median rate of pay) by the aggregate 39,834 workweeks, for a result of $796,680. For Harris's missed-rest-break claim, KMI assumed two violations per week per employee and then multiplied $40.00 (twice the median rate of pay of $20.00 per hour) by the aggregate 39,834 workweeks, for a result of $1,593,360. These numbers, coupled with the calculations for the other claims, amounted to just under $7 million.

In remanding this case, the district court held that "no evidence" supports KMI's assumption that "the 442 potential class members regularly, or at least more often than not, worked over 3.5 or 8 hours." The order refers to shifts "over 3.5" because that is the shift length that the complaint alleges is sufficient to trigger the requirement to provide a rest break under the applicable California law. The

why the district court's reasoning was incorrect. Indeed, that brief's only mention of those alternative rulings occurs in the course of explaining what the district court "found" in "*properly* determin[ing]" that the case should be remanded (emphasis added). Under these circumstances, I consider Plaintiff's alternative arguments that the district court rejected to be forfeited. *See United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (en banc). As to the remaining alternative issues raised by Plaintiff that the district court did not address, I would decline to reach those issues in the first instance on appeal.

requirement to provide a meal break is triggered by a shift length of five hours, not eight hours, but the district court's reference to "the number of employees that worked [a] full time" shift of "8 hours" was presumably attributable to how the court resolved the parties' arguments about Plaintiff's separate *overtime* claims. Specifically, the district court held that KMI's assumptions about Plaintiff's overtime claim would be reasonable *if* KMI had shown that its assumptions about how many class members worked "over 3.5 or 8 hours" were valid. Accordingly, if KMI properly relied on the premise that the class members regularly worked eight-hour shifts, then KMI's conclusions as to *both* meal breaks and overtime would, in the district court's view, be valid. And because eight is larger than 3.5, the same would be true, in that circumstance, of KMI's conclusion as to the *rest break* claims. As a result, the district court's dispositive holding is that KMI failed to carry its burden to show CAFA jurisdiction because it failed to establish that all 442 putative class members regularly worked full-time shifts.

## II

In my view, the district court's reasons for remanding the case were flawed, and I would therefore reverse and remand for further proceedings.

### A

Where, as here, a plaintiff challenges a defendant's notice of removal by filing a motion to remand, the defendant's obligation in responding to that motion

4

depends on whether the plaintiff has brought a "'facial' [or] 'factual' attack[] on [the defendant's] jurisdictional allegations." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2020)).  As we explained in *Salter*:

> A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction.  For a facial attack, the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.  A factual attack, by contrast, contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings.  When a factual attack is mounted, the responding party must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context.

*Id*. (simplified).  Thus, in addressing a *facial* attack on the notice of removal, a court would apply the same familiar standards for evaluating the adequacy of any pleading—*viz.*, whether the notice's well-pleaded allegations raise a plausible inference that the amount in controversy exceeds $5,000,000.  *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *see also Dart Cherokee*, 574 U.S. at 89 (notice of removal need only include a "plausible allegation" that the amount in controversy is met).  But in the context of a *factual* attack, the removing defendant ultimately has the burden to *establish* the amount in controversy by a preponderance of the evidence.  *See* 28 U.S.C. §§ 1446(c)(2)(B); *id*. § 1453(b) (procedures set forth in

5

§ 1446 generally apply to CAFA removals).[3]

On appeal, the parties sharply dispute whether Plaintiff's motion to remand properly asserted a factual attack or should instead be understood as asserting only a facial attack. I do not think that we need to resolve that issue because, even assuming that the remand motion here properly raised a factual attack, the district court's reasons for remanding the case were clearly erroneous.[4]

**B**

In reviewing the district court's remand order, I begin by first clearly identifying the specific grounds on which that order was based. Then, having identified those grounds, I will explain why they did not warrant remand.

---

[3] Section 1453(b) explicitly states that CAFA removals must be "in accordance with section 1446," subject to several exceptions that are expressly set forth in the statute. *See* 28 U.S.C. § 1453(b). Because the preponderance requirement is not among the exemptions from § 1446 that are listed in § 1453(b), it is clear that § 1453(b)'s incorporation of § 1446's procedural rules into CAFA cases carries with it, *mutatis mutandis*, the preponderance requirement that § 1446(c)(2) applies to cases removed under § 1332(a). *Cf. Dart Cherokee*, 574 U.S. at 88 n.1 (assuming, without deciding, that the preponderance standard that § 1446 applies to ordinary diversity removals under § 1332(a) also applies to CAFA removals); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (applying preponderance standard to CAFA based on precedent predating the enactment of the preponderance requirement in § 1446(c)(2)).

[4] At the very least, the issue of whether Plaintiff's motion properly asserted a factual attack is sufficiently murky that, were I not inclined to reverse outright, I would remand the case for further factual development. *See infra* at 14–15.

**1**

In a CAFA case, the ultimate "fact" that a removing defendant must plead or prove is not that the defendant is *actually* liable for more than $5,000,000, but rather that the amount in *controversy* exceeds $5,000,000. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (rejecting any requirement that the defendant must "prove it actually violated the law" in the manner alleged). Because the ultimate thing to be proved by the removing defendant is the amount that the plaintiff's *allegations* place in controversy, we have recognized that, even in the context of a factual attack, the manner in which a removing defendant proves the value of what a plaintiff alleges necessarily differs from the way in which an ordinary purely factual issue is proved.

In particular, determining the amount in controversy may require putting an appropriate construction on what may in some respects be vague and general allegations in the complaint. For example, if (as here) the plaintiff alleges that a particular violation of law "regularly" occurred, the defendant will have to make a "reasonable assumption" as to what that allegation should be taken to mean. *Arias*, 936 F.3d at 922, 925. Defendant may well think that the *actual* rate of violation is zero, but some reasonable construction must be given, for amount-in-controversy purposes, to a plaintiff's generalized allegation that there were routine violations. Accordingly, even in responding to a factual attack, a removing defendant may

rely upon "a chain of reasoning that includes *assumptions*" about what the allegations of the plaintiff's complaint mean. *Ibarra*, 775 F.3d at 1199 (emphasis added); *see also Arias*, 936 F.3d at 925. We have cautioned, however, that such "assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199. But we have also clearly held that the required reasonable grounding may be "founded on the allegations of the complaint" itself and does not necessarily have to be based on extrinsic evidence presented by the defendant. *Arias*, 936 F.3d at 925.

In calculating the amount at issue in Plaintiff's meal-break claim, KMI pointed to the complaint's allegations that "Plaintiff and the putative class *consistently* worked through their meal periods" and "were *regularly* not provided with uninterrupted meal periods" (emphasis added), and KMI assumed that the complaint should thereby be understood as asserting a violation rate of at least 20 percent—*i.e.*, that Plaintiff and the class were denied at least one out of five of the meal breaks to which they were entitled. Likewise, the complaint alleged that "Plaintiff and the putative class were *regularly* not provided with uninterrupted *rest periods*" because they "were *constantly* working through their rest periods to complete their daily tasks on time" (emphasis added), and KMI again assumed that that these allegations should be taken as asserting a violation rate of at least 20 percent. The district court agreed with KMI that these assumptions were

8

reasonable, and it rejected Plaintiff's arguments to the contrary. Indeed, in my view, those assumptions were unduly conservative.

The only respect in which the district court found fault with KMI's calculation relates to whether the assumed 20 percent violation rate was applied to the correct multiplicand, which in this case would be the total number of meal and rest breaks that should have been granted to class members according to Plaintiff's complaint. In determining that latter number, KMI first calculated the "aggregate" number of "workweeks" for all putative class members during the relevant time-period as being 39,834. A 20 percent violation rate, KMI reasoned, would mean one meal-break violation and two rest-break violations for every full workweek. (Because the complaint asserts that it takes only 3.5 hours to earn a rest break, *see supra* at 3, an employee working a full workweek would be entitled to five meal breaks and ten rest breaks.) KMI therefore calculated 39,834 as the number of alleged meal-break violations, and it calculated double that number (*i.e.*, 79,668) as the number of alleged rest-break violations. KMI then applied the median hourly pay of $20.00 in calculating the premium payment due per alleged violation. *See United Parcel Serv. Wage & Hour Cases*, 125 Cal. Rptr. 3d 384, 393 (Cal. Ct. App. 2011) (California Labor Code generally allows "up to two premium payments per workday—one for failure to provide one or more meal periods, and

9

another for failure to provide one or more rest periods").[5]

The district court's *sole* criticism of this calculation was that, in determining the total number of meal breaks and rest breaks that should have been provided to class members during the relevant time period, KMI should not have calculated the number of full-time shifts at issue simply by taking the aggregate number of workweeks and multiplying by five. If some of the shifts included in the 39,834 workweeks were *less* than 3.5 hours or five hours, then KMI's resulting calculations as to the aggregate number of meal breaks and rest breaks that should have been provided "would be grossly exaggerated." Accordingly, the district court reasoned, KMI should have presented more granular numbers that showed the *actual* respective total numbers of full-time shifts and part-time shifts.[6]

---

[5] Neither party has raised the issue of whether *United Parcel Service* limits a class member to one premium payment when two rest violations occur on the same day and whether, if so, that would require a corresponding adjustment in KMI's calculations. I therefore do not address the point either. Plaintiff does contend, however, that KMI should have calculated the relevant payments by applying the *average* hourly rate rather than the median rate. The district court did not address this point, however, and neither will I. *See supra* note 2. But even if Plaintiff is correct, any resulting error would be harmless, because the uncontested evidence shows that the average rate of pay was *higher* than the median rate (meaning that any error on this score was in Plaintiff's favor).

[6] Whether the membership of each sub-class was exactly the same, *see* Maj. Opin. at 10–11, 14, is ultimately beside the point—what matters is whether the 39,834 *workweeks* consisted of full-time shifts. If they did, then KMI's calculations were valid.

**2**

In my view, the district court erred in remanding this case based on KMI's failure to provide, in its opposition to the remand motion, the more exacting calculation of actual shifts that the district court demanded.

By insisting on this level of up-front precision, the district court lost sight of the applicable standard of proof. "The amount in controversy is simply an *estimate* of the total amount in dispute," and a removing defendant carries its burden to establish the amount in controversy by a preponderance if it presents evidence that "'explain[s] *plausibly* how the stakes exceed $5 million.'" *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400–01 (9th Cir. 2010) (emphasis added) (citation omitted); *see also Arias*, 936 F.3d at 927. Although it is theoretically possible that there may not be an exact equivalence between (1) the total number of workweeks multiplied by five and (2) the total number of full-time shifts calculated more precisely on a shift-by-shift basis, there is no basis in the record for concluding that the potential difference between these two numbers is material to the ultimate jurisdictional determination in this case. In *Rea v. Michaels Stores Inc.*, 742 F.3d 1234 (9th Cir. 2014), we rejected as "clearly erroneous" a comparable flyspecking in which "the district court faulted Michaels for only showing that the managers were *expected* to work 45 hours or more each week rather than showing they *actually* worked that amount." *Id*. at 1239. We noted that some managers had

11

testified that "they did work 45 hours or more each week," and more broadly we stated that "[t]here was no evidence that the expectation of 45 hours or more was not met." *Id*. Just as there was "no evidence" in *Rea* that the asserted theoretical gap in the evidence made a difference, so too here. *Id*.; *see also Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 196–97 (4th Cir. 2017) (estimating the amount in controversy does not require the exactitude of "'nuclear science,'" and district court erred by requiring defendant to "tailor its evidence to exactly match [the plaintiff's] proposed class" (citation omitted)).

Moreover, in considering the significance of what the district court deemed a "blank[]" in KMI's evidence that needed to be "fill[ed] in," I think it is critical to keep in mind that the ultimate thing to be proved here is the overall amount in controversy, and not the *precise* number of full-time shifts. The fact that determining the amount in controversy requires multiplying the total estimated number of shifts by the assumed violation rate, *see supra* at 9, greatly reduces the significance of the sort of additional granular detail the district court demanded. No one disputes that the assumed 20 percent violation rate is not (and need not be) a very precise estimate, and here, the use of a 20 percent rate is, if anything, much too conservative; in my view, a violation rate of 40 percent or even 50 percent would be a reasonable estimate of what it means to say that violations "regularly" and "constantly" occur. As a result, the substantial range of reasonable violation-

12

rate estimates introduces a significant built-in margin of error in the *overall* calculation of the amount in controversy: it means that, unless KMI's calculation of the relevant aggregate number of full-time shifts is off by a factor of 100 percent or more, KMI's use of "workweeks" to estimate "shifts" would not make a difference. Put another way, unless there is some reasonable basis to suspect that *half or more* of the shifts worked by KMI's employees were part-time shifts, the additional precision the district court demanded in determining the total number of shifts would not have made a difference.

Here, Plaintiff's own allegations about the nature of the class members' work make it simply unreasonable to think that the class consists mostly of part-time workers. In contrast to the hospitality-industry workers at issue in *Arias*, 936 F.3d at 925 & n.3, KMI's employees are alleged to have performed "[i]ndustrial [s]ervices" at "refineries," which sometimes entailed "suit[ing] up" in appropriate "gear" to "clean the tankers." The complaint further alleges that KMI "chronically understaff[ed] each work shift with not enough workers" and "impos[ed] so much work on each employee" that it was hard for them "to finish their work on time." Given the nature of the employment described in Plaintiff's complaint, it is unreasonable to suspect that any very substantial proportion of the putative class consists of part-time employees—much less that the class members here work part-time to such a significant degree as to make a *material* difference in the overall

13

calculation of the amount in controversy.

Accordingly, I conclude that the sole reason given by the district court for remanding this case was clearly erroneous. *Rea*, 742 F.3d at 1239. I would reverse the remand order and remand for further proceedings to resolve any remaining issues. *See supra* note 2.

## III

At the very least, I think that the district court should have given KMI an opportunity to address the court's specific concern before remanding.

Because Plaintiff's remand motion rested largely on the premise that KMI's removal notice and accompanying declaration were insufficient to establish CAFA jurisdiction, it was at least "ambiguous" as to "whether [that] motion posed a facial or a factual attack," *Wichansky v. Zoel Holding Co.*, 702 F. App'x 559, 560 (9th Cir. 2017). Moreover, it was Plaintiff's *reply* brief below that most clearly flagged the point that KMI had not examined shift-by-shift *eligibility* for rest breaks and meal breaks, as the district court implicitly noted in citing only the reply brief on that point. As a result, KMI did not receive adequate notice that Plaintiff's remand motion was raising a factual challenge as to this specific point, *cf. Katz v. Children's Hosp. of Orange County*, 28 F.3d 1520, 1534 (9th Cir. 1994) (summary judgment motion must sufficiently identify the disputed issues, so as to put opposing party "on notice that [it] is required to adduce facts" with respect to those

14

issues), and I would therefore at least remand the matter "to allow both sides to submit evidence related" to the disputed issue. *Ibarra*, 775 F.3d at 1199.[7]

I respectfully dissent.

---

[7] Contrary to what the majority contends, *Ibarra* did not involve a situation in which the parties had not had an opportunity to present evidence beyond what was "submitted with the defendant's notice of removal." *See* Maj. Opin. at 15. Just as in this case, the plaintiff in *Ibarra* made a "motion to remand the class action to state court, [the defendant] opposed [the] plaintiffs' motion, and [the] plaintiffs filed a reply in support of their remand motion." *Ibarra*, 775 F.3d at 1196. In fact, the parties in *Ibarra* had even *more* opportunity to place evidence in the record, given that the case had already been remanded twice to state court, appealed to this court, and remanded back to the district court prior to the plaintiffs' filing of their renewed motion to remand. *Id.* Moreover, the *Ibarra* plaintiffs' remand motion "contested [an] assumption" without "assert[ing] an alternative violation rate grounded in real evidence," *id.* at 1199—which is exactly what the majority says that Plaintiff did here. In short, none of the majority's grounds for distinguishing *Ibarra* are valid. Our remand in *Ibarra* can only be understood as resting on the notion that the defendant had not been given sufficient notice of the need to present evidence concerning the *particular* issue that we identified as dispositive, *id.* at 1199, and the same is true here.

15