FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GRISELDA JAUREGUI, individually, and on behalf of other members of the general public similarly situated, *Plaintiff-Appellee*, | No. 22-55058 D.C. No. 2:21-cv-04657-RGK-PD |
| v. | |
| ROADRUNNER TRANSPORTATION SERVICES, INC., an unknown business entity, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted February 7, 2022
San Francisco, California

Filed March 17, 2022

Before: Andrew D. Hurwitz and Lawrence VanDyke,
Circuit Judges, and Joan N. Ericksen,* District Judge.

Opinion by Judge VanDyke

---

*The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

## SUMMARY**

### Amount in Controversy / Class Action Fairness Act

The panel reversed the district court's order that remanded a class action to California state court after it determined that the $5 million amount in controversy requirement of the Class Action Fairness Act ("CAFA") was not met.

The plaintiff filed a putative class action against Roadrunner Transportation Services on behalf of all Roadrunner and former California hourly workers, alleging violations of California labor law, primarily wage and hour violations. Roadrunner removed the case to federal court, invoking jurisdiction under CAFA. Plaintiff responded with a motion to remand for lack of jurisdiction. The district court found that Roadrunner failed to meet its burden to establish the requisite $5 million minimum for the amount in controversy, and remanded to state court.

The panel held that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction. Presumably because of this, latent throughout the order was an inappropriate demand of certitude from Roadrunner over its assumptions used in calculating the amount in controversy.

The panel also held that the district court erred in how it approached the amount in controversy analysis. Because plaintiff contested removal, Roadrunner was required to

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

show the amount in controversy by a preponderance of the evidence. Roadrunner offered substantial evidence and identified assumptions to support its valuation of each of the various claims in this case. The district court erred in assigning a $0 value for the amount in controversy for each of the five claims where it disagreed with Roadrunner's calculations. The panel held that nothing in CAFA or caselaw compels such a draconian response when the district court disagrees with a single assumption underlying the claim valuation.

The panel held that the CAFA amount in controversy requirement was met. Using the lowest hourly wage rate identified by the district court, the minimum wage claim was reasonably valued at $4.5 million. Added to the $2.1 million for the two other claims accepted by the district court, that would be more than enough to establish jurisdiction under CAFA, without even considering any of the other four claims that the district court also zeroed-out. The panel remanded to the district court for further proceedings.

**COUNSEL**

Jules S. Zeman (argued), Frederic W. Norris, and Jennifer N. Hinds, Husch Blackwell LLP, Los Angeles, California, for Defendant-Appellant.

Eileen B. Goldsmith (argued) and Michael Rubin, Altshuler Berzon LLP, San Francisco, California; Arby Aiwazian, Edwin Aiwazian, and Joanna Ghosh, Lawyers for Justice, PC, Glendale, California; for Plaintiff-Appellee.

## OPINION

VANDYKE, Circuit Judge:

## I.  INTRODUCTION

We are asked in this case to review the district court's order remanding a class action to California state court after it determined that the $5 million amount in controversy requirement of the Class Action Fairness Act was not met. Because the district court erred in its amount in controversy analysis by assigning a $0 valuation to several claims, we reverse and remand.

## II.  BACKGROUND

Plaintiff Griselda Jauregui filed a putative class action in California Superior Court against Defendant Roadrunner Transportation Services (Roadrunner) on behalf of all Roadrunner current and former California hourly workers. The complaint alleged numerous violations of California labor law focused primarily on wage and hour violations.[1]

---

[1] As listed by the district court, the alleged violations include:

(1) Labor Code §§ 510 and 1198 (unpaid overtime); (2) Labor Code §§ 226.7 and 512(a) (unpaid meal premiums); (3) Labor Code § 226.7 (unpaid rest period premiums); (4) Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) Labor Code §§ 201 and 202 (final wages not timely paid); (6) Labor Code § 204 (wages not timely paid during employment); (7) Labor Code § 226(a) (non-compliant wage statements); (8) Labor Code § 1174(d) (failure to keep requisite payroll records); (9) Labor Code §[§] 2800 and 2802 (unreimbursed

Roadrunner removed the case to federal court, invoking Class Action Fairness Act (CAFA) jurisdiction.  Plaintiff responded with a motion to remand, arguing that the district court lacked jurisdiction under CAFA because the requisite $5 million minimum for the amount in controversy had not been met.[2]   As authorized under CAFA, Roadrunner responded with "summary judgment style evidence" to establish the amount in controversy.   Roadrunner relied primarily on the declaration of its senior payroll lead who concluded that, based on the company's payroll data and Plaintiff's allegations, the amount in controversy was $14,780,377.06.[3]

The district court found that Roadrunner failed to meet its burden and remanded the case to the state court.  The court reached this conclusion after independently evaluating

_____

business expenses); and (10) Business & Professions Code §§ 17200 *et seq*.

[2] In addition to the $5 million amount in controversy requirement, CAFA jurisdiction also requires a class of more than 100 members who are minimally diverse.  *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014).  Neither party disputes that the latter two criteria are met here.

[3] This number is different than the $6,743,788.90 figure Roadrunner initially offered as the amount in controversy when it removed the case. Plaintiff opposes this change as an unfair and an improper amendment to the removal notice.  But Roadrunner's removal notice was required only to "contain[] a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  Only after removal is challenged by the plaintiff did "both sides submit proof" supporting their positions as to the amount-in-controversy.  *Dart Cherokee*, 574 U.S. at 88.  The difference in Roadrunner's amount in controversy estimates was thus not improper, but rather simply the result of Roadrunner appropriately responding to the new standard and new method for supporting its claim at a later point in the litigation.

Roadrunner's amount in controversy calculations for each of the seven alleged violations.  The court found that Roadrunner had sufficiently demonstrated the claimed amount in controversy for only two of the claims (overtime claims and meal and rest break claims).  For the remaining five claims, the court found that Roadrunner erred in its calculation of the amount in controversy, mostly because of reliance on incorrect variables or assumptions.  Critical for our purposes, the district court assigned a $0 value for the amount in controversy for each of the five claims where it disagreed with Roadrunner's calculations.  As a result, the district court concluded that the amount in controversy was only $2.1 million—the total for the two claims in which the district court agreed with Roadrunner's calculations.  Because this was less than the $5 million CAFA threshold, the court granted Plaintiff's motion to remand.  Roadrunner timely appealed.[4]

## III.  ANALYSIS

Remand orders in cases involving CAFA are reviewed de novo.  *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 792 (9th Cir. 2018).  A defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is "contested by the plaintiff or questioned by the court."  *See Dart Cherokee*, 574 U.S. at 87.  When a plaintiff contests the amount in controversy allegation, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.* at 88.

---

[4] While remand orders are generally not reviewable on appeal, "[t]here is an exception … for cases invoking CAFA."  *Dart Cherokee*, 574 U.S. at 85–86.

**A.**

Much of the district court's analysis underlying the order granting the remand consists of granular evaluations of Defendant's evidence, assumptions, and arguments. That evaluation was appropriate, but in the end the district court lost sight of the ultimate question: whether Roadrunner met its burden of showing the amount in controversy exceeded $5 million. The two primary errors affecting the remand order were putting a thumb on the scale against removal and assigning a $0 amount to most of the claims simply because the court disagreed with one or more of the assumptions underlying Roadrunner's amount in controversy estimates.

In both its "Judicial Standard" section and subsequent analysis, the district court imposed a heavy burden on Defendant to prove that the case belongs in federal court. This threshold posture contravenes the text and understanding of CAFA and ignores precedent.

CAFA "significantly expanded federal jurisdiction in diversity class actions." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010); *see also Dart Cherokee*, 574 U.S. at 89 ("Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."). Congress expressly noted in CAFA's "Findings and Purposes" that the statute was designed to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Class Action Fairness Act of 2005, 28 U.S.C. § 1711 (2005).

Given this statutory background, the Supreme Court has advised "that no antiremoval presumption attends cases invoking CAFA," in part because the statute was enacted "to facilitate adjudication of certain class actions in federal

court." *Dart Cherokee*, 574 U.S. at 89. The Court has explained that "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (cleaned up); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

Here, the district court imposed—both explicitly and in its analysis—a presumption *against* CAFA's jurisdiction. The district court's "Judicial Standard" section, which explained the legal framework for the case, states that

> courts "strictly construe the removal statute against removal jurisdiction" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant always bears the burden of establishing that removal is proper. *Id.* The enactment of CAFA does not alter this rule. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA] Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction.").

This threshold explanation does not square with the numerous statements quoted above insisting on an expansive understanding of CAFA. While the district court went on to cite *Dart Cherokee* for the proposition that "no antiremoval presumption attends cases invoking CAFA," it is difficult to reconcile that citation with the court's earlier statements in the "Judicial Standard" section. Regardless of how one

interprets these competing statements, it appears the district court had *some* notion that removal under CAFA should be met with a level of skepticism and resistance.  That was incorrect.

Presumably because of this, latent throughout the order was an inappropriate demand of certitude from Roadrunner over its assumptions used in calculating the amount in controversy.  The problem with that approach is that a CAFA defendant's amount in controversy assumptions in support of removal will always be just that: *assumptions*.  At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint—much of which it presumably disagrees with—to estimate an amount in controversy.  This is also at a stage of the litigation before any of the disputes over key facts have been resolved.  We have therefore made it clear that when calculating the amount in controversy, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).  As is inescapable at this early stage of the litigation, the removing party must be able to rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," as long as the reasoning and underlying assumptions are reasonable.[5]  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015).

The district court did not afford Roadrunner this latitude when analyzing the amount in controversy.  As one example, the court rejected Roadrunner's assumption that each

---

[5] Given this understanding, we conclude that Roadrunner's assumptions regarding the number of affected class members and the violation rate were reasonable for the various relevant claims.

terminated employee would have been entitled to the maximum 30-day waiting time penalty because Roadrunner "provides no evidence" supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty. The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim.

## B.

The district court also erred in how it approached the amount in controversy analysis. Because Plaintiff contested removal, Roadrunner was required to show the amount in controversy by a preponderance of the evidence. *Dart Cherokee*, 574 U.S. at 88.

Our court has defined the amount in controversy as simply "the amount at stake in the underlying litigation …." *Theis Rsch., Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). Importantly, that "'[a]mount at stake' does not mean likely or probable liability; rather, it refers to *possible* liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) (emphasis added); *see also Lewis*, 627 F.3d at 400 (noting that the amount in controversy is "an estimate of the amount that will be put at issue in the course of the litigation" (citing *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008))).[6]

---

[6] This understanding undermines Plaintiff's reliance on various statutes of limitation to challenge Roadrunner's calculations. This

Recognizing that the amount in controversy is supposed to be an estimate of the *entire* potential amount at stake in the litigation demonstrates the unrealistic nature of assigning $0 to five out of seven of Plaintiff's claims. Of course, if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate for a district court to assign that claim a $0 value. But that is not what happened here. Roadrunner offered substantial evidence and identified assumptions to support its valuation of each of the various claims in this case. In analyzing each of the claims, the court disagreed with some of Roadrunner's assumptions, identifying other assumptions that it concluded were better. In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption. The approach used by the district court turns the CAFA removal process into an unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick—even where, as here, the defendant provided substantial evidence and analysis supporting its amount in controversy estimate.

Plaintiff's minimum wage claim—one of her higher value claims in this case—illustrates our point. In its opposition to the remand motion, Roadrunner calculated the amount in controversy for the minimum wage claim by assuming that one hour of work a week went unpaid. Roadrunner then took the 63,431 workweeks in question and

---

confuses the amount in controversy with the amount that will ultimately be recovered. "[T]he strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019).

multiplied that by an average wage of $16.22, for a total of about $1 million. That amount was doubled according to the statutorily imposed liquidated damages, and an additional $3.1 million in potential penalties was added. In total, Roadrunner estimated the amount in controversy for this claim at $5.2 million, alone enough to confer CAFA jurisdiction.

The district court did not disagree with most of Roadrunner's assumptions for the minimum wage claim estimate. But it noted that Roadrunner erred in using a $16.22 hourly wage figure for these calculations, because California's minimum wage for the time in question ranged from $10.50 in 2017 to $14.00 in 2021—all lower than the $16.22 amount used. Because this resulted in Defendant's calculations being a "gross over-calculation," the district court assigned a $0 valuation for the minimum wage claim.

Assigning a $0 value was improper. Neither party, nor the district court, believed the amount in controversy for this claim to be anywhere near $0. Even using the lowest hourly wage rate offered by the district court ($10.50), the amount in controversy for this claim alone would still come out to over $4.5 million.[7]

---

[7] This figure was calculated by using the same formula relied on by the district court: multiplying the hourly wage ($10.50) with the number of workweeks (63,431) for a total of $666,025.50. That number is then doubled for the liquidated damages, for a total of $1,332,051. The $3,171,550 penalty is then added in (the same figure used by the district court), for a grand total of $4,503,601. The purpose of this calculation is simply to show that the amount in controversy for these claims will exceed $5 million when all the claims are properly evaluated even if the lowest plausible figures are used, not to provide any definitive calculation for the value of the minimum wage claim.

Nothing in CAFA or our caselaw compels such a draconian response when the district court disagrees with a single assumption underlying the claim valuation. To the contrary, in *LaCross* we reversed a district court that had remanded the case after disagreeing with Knight Transportation's $44 million amount in controversy calculation. *See* 775 F.3d at 1201. The district court found Knight had not met its burden to establish the $5 million amount in controversy because it concluded that Knight had "relied on a flawed assumption" critical to the case. *Id.* We disagreed with the district court's ruling for multiple reasons, but one is especially relevant for our purposes. In addressing fuel costs—a central claim in the case—we noted that "while the number of drivers varied during the class period, *even using the lowest number of drivers* in 2010 for all 16 quarters during the class period," the fuel costs would still exceed $5 million. *Id.* at 1203 (emphasis added). Instead of attempting to determine which assumption would *best* calculate the amount in controversy for the fuel costs claim, we concluded that the amount in controversy would be met using *any* of the plausible figures.

So too here. Using the lowest hourly wage rate identified by the district court, the minimum wage claim is reasonably valued at $4.5 million. Added to the $2.1 million for the two other claims accepted by the district court, that would be more than enough to establish jurisdiction under CAFA, without even considering any of the other four claims that the district court also zeroed-out.[8]

---

[8] Because the amount in controversy is met just looking at three of the seven claims, we need not further address the district court's treatment of any of the remaining claims.

Plaintiff argues that the district court did not err in assigning a $0 value to some of Roadrunner's claims because the "district court should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). *LaCross* demonstrates that there is an important distinction between a court offering entirely new or different assumptions itself versus modifying one or more assumptions in the removing party's analysis. Where a defendant's assumption is unreasonable on its face without comparison to a better alternative, a district court may be justified in simply rejecting that assumption and concluding that the defendant failed to meet its burden. But often, as illustrated here, the *reason* a defendant's assumption is rejected is because a different, better assumption is identified. Where that's the case, the district court should consider the claim under the better assumption—not just zero-out the claim. The latter approach creates a perverse incentive for plaintiffs seeking a CAFA remand to simply nit-pick assumptions by providing "better" ones, even when, as our Court observed in *LaCross*, remand would still be inappropriate even under the better assumption. Rewarding that "focus on the trees, not the forest" approach would subvert the purposes of CAFA, because it would result in remanding cases where the real amount in controversy is clearly over the $5 million threshold.

## IV.  CONCLUSION

For the reasons stated herein, the district court's order to remand the case is reversed and remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**